## LEZINSKY v. METROPOLITAN ST. RY. CO.

(Circuit Court of Appeals, Second Circuit. June 24, 1898.)

### No. 112.

1. STREET RAILWAYS—LIABILITY FOR TORT—UNAUTHORIZED ACTS OF EMPLOYES.
In the absence of testimony showing authority from the company, the act of a street-railway conductor in causing the arrest of a former passenger immediately after ejecting him from the car for refusing to pay fare is outside the course of his employment, so that no action will lie against the company for malicious prosecution and false imprisonment.

2. SAME—RATIFICATION OF UNAUTHORIZED ACT.
The action of a clerk in the claims department of a street-railway company, in endeavoring to convince a magistrate that a conductor was right in causing the arrest of a passenger after ejecting him from the car for refusal to pay fare, is not a ratification of the conductor's unauthorized action, where the clerk was merely directed by his superior to go to the police court, "and see what the matter was."

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action at law by Eugene Lezinsky against the Metropolitan Street-Railway Company for malicious prosecution and false imprisonment. In the circuit court a verdict was directed for defendant, and judgment entered accordingly, to review which the plaintiff sued out this writ of error.

Samuel S. Slater, for plaintiff in error.

Charles F. Brown, for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is a writ of error to review a judgment in the circuit court for the Southern district of New York for the defendant, upon a verdict which was directed by the court upon the defendant's motion at the close of the plaintiff's case. The action was against the Metropolitan Street-Railway Company for malicious prosecution and for false imprisonment. The facts were as follows: The plaintiff, on April 3, 1896, at 12:30 p. m., entered at Spring street, in New York City, a car of the defendant, which was going uptown, and paid his fare. The car stopped, on account of a blockade, before it reached Houston street, when the conductor told the passengers that, if they were in haste, they had better walk to Houston street, where cars were being switched back, and take an uptown car, that he had no transfers, but that "it would be all right" if the passengers would explain to the inspector who was in charge of switching the cars. The plaintiff walked to Houston street, but a car had just left. The inspector told him to explain to the conductor of the next northward car the circumstances in regard to the payment of fare, and that a new payment would not be required. The plaintiff, with other passengers from the original car, boarded a car at Bleecker street, a block above Houston street; but its conductor demanded fare from all the passengers, would not recognize the previous payment, stopped the car at Ninth street, and ordered the passengers to pay the fare or to leave the car. The plaintiff refused to obey either direction, was ejected, and thereupon the conductor charged him with disorderly conduct, and requested a policeman to arrest him. He was put under arrest, and made a countercharge against the conductor, who was also arrested, and both were taken to the station house, detained 2½ hours, when the plaintiff was tried and discharged. Upon the way to the station house, the party met the conductor of the first car, who explained the facts to the second conductor, but he persisted in making the charge. At the station house, one Isaacson, a clerk in the defendant's claim department, who was sent there by some one of the defendant's officers to find out what the matter was, endeavored to persuade the plaintiff to withdraw his charge, saying that the conductor would also withdraw; but the plaintiff refused, and the case was heard, Isaacson arguing before the magistrate in support of the charge against the plaintiff.

The complaint was not brought to recover damages for the defendant's unlawful ejection of the plaintiff from the car, but to recover for a malicious prosecution and false imprisonment by the defendant's agent, after the plaintiff left the car. The defendant's liability depends upon the answer to the questions: First. Was the conductor acting in the course of his employment and within the scope of his authority, express or implied, in causing the arrest of the plaintiff, after he left the car, for his prior disobedience?

And, secondly, if the conductor acted without authority, was there any testimony from which a jury could properly infer a ratification by the defendant of the conductor's act in causing the arrest?

The defendant is a common carrier, and it was its duty, upon the payment of fare, to exercise due care in the safe carriage of the defendant to the point upon the line of the road where he wished to go; and for his improper removal from the car it would have been liable in damages, because the carrier's obligation to transport safely "includes the duty of protecting the passenger from any injury cause by the act of any subordinate or third person engaged in any part of the service required by the act of transportation." Steamship Co. v. Kane (decided at the present term of this court) 88 Fed. 197. The subsequent act of the conductor in causing the arrest of the passenger was apparently outside of the course of his employment, outside of his service as a conductor, and was his act as an individual. It cannot be inferred, in the absence of testimony, that it is in the course of the employment of a conductor of a street cable car to cause the immediate arrest of a former passenger for his conduct in refusing to pay fare or to leave the car, and thus to take the risk of being compelled to leave his car in the street temporarily unprovided with a conductor. A criminal charge, under the circumstances of this case, was baseless (Lynch v. Railway Co., 90 N. Y. 77); and while it is established that "a corporation is liable civiliter for torts committed by its servants or agents precisely as a natural person, and that it is liable as a natural person for the acts of its agents done by its authority, express or implied," though there be no written appointment or authority (Railway v. Harris, 122 U. S. 597, 7 Sup. Ct. 1286; State v. Morris & E. R. Co., 23 N. J. Law, 369; Rounds v. Railroad Co., 64 N. Y. 129; Mott v. Ice Co., 73 N. Y. 543), yet there should be some testimony or some circumstance to show that authority had been conferred for such a manifest apparent departure from the line of the business of a conductor of a street electric car.

It was sought to show ratification of the act by the attendance and conduct of one Isaacson at the hearing before the magistrate, and by the scope of Isaacson's employment. He was a clerk in the defendant's claim department, which had charge of the preparation of accident cases for trial, and was sent by his superior officers to go to the police court, "and see what the matter was." Inasmuch as a conductor had left his car, and been taken to the station house in charge of an officer, the direction was a very natural one to give. Isaacson went, and after ineffectually trying to induce the plaintiff to abandon his charge, and have a dismissal of both cases, he endeavored to show the magistrate that the conductor was in the right, and, in so doing, imitated the conductor in departing from his employment, without authority and with intrusive meddlesomeness. There would have been no propriety in submitting to the jury the question of ratification, based upon Isaacson's act or authority or course of business. The judgment of the circuit court is affirmed, with costs.