[Civ. No. 3598. First Appellate District, Division One.—December 23, 1920.]

MICHAEL McINERNEY, Respondent, v. UNITED RAIL-ROADS OF SAN FRANCISCO (a Corporation), Appellant.

[1] EMPLOYER AND EMPLOYEE—TORTIOUS ACTS OF GUARDS OF STREET RAILROAD COMPANY — ASSAULT AND FALSE IMPRISONMENT — MISTAKEN IDENTITY—LIABILITY OF COMPANY.—Where a street railroad company during a strike, acting under general instructions from its president to his subordinates, sent to a section of the city where acts of violence had been and were being committed, employed patrolmen and guards to protect the nonstriking employees and company's property and preserve order, the company was liable

for the acts of such guards in assaulting and arresting an individual under the mistaken belief that he was one of the strikers and participants in the unlawful acts, since they were acting within the scope of their authority, regardless of the fact of mistaken identity and guilt.

[2] Id.—Acts Within Scope of Employment—Improper Manner of Performance — Liability of Employer. — Where employees of a railroad company were acting within the scope of their authority in taking into custody a person believed to be guilty of unlawful acts, the fact that they did so with undue violence or with opprobrious and insulting forms of speech did not absolve their employer of liability for their wrongful action.

[3] Id. — Wrongful Acts of Street Railroad Employees — Exemplary Damages—Insufficiency of Evidence.—In this action to recover damages for an alleged assault upon and imprisonment of the plaintiff by guards employed by a street railroad company to protect its property during a strike, there was no sufficient evidence of malice, fraud, or oppression on the part of the company against the plaintiff to warrant a verdict for exemplary damages in any sum, and the judgment was modified by striking therefrom the item of damages so assessed.

[4] Corporations — Acts of Employees — Liability in Exemplary Damages.—A corporation may become liable in exemplary damages where an act of one of its employees done in ill will or in actual malice or under circumstances of fraud or oppression is done with the knowledge or under the express direction of its superior officials having power to bind the corporation, or, if done without such knowledge or direction, is thereafter ratified by such officials, with full knowledge as to the willful and malicious quality of such acts.

[5] Employer and Employee — Wrongful Acts of Employees — Direction of Employer—Verdict Exonerating Employees—Liability of Employer.—In an action against an employer and its employees for damages for assault and false imprisonment, a verdict in favor of the employees does not exonerate the employer from liability, where the employees were acting under the direction of the employer, since, under such circumstances, the employer was a joint participant.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Bernard J. Flood, Judge. Modified and affirmed.

---

4. Liability of corporations for exemplary damages, note, 59 Am. St. Rep. 589.

The facts are stated in the opinion of the court.

Wm. M. Cannon, Wm. M. Abbott and Kingsley Cannon for Appellant.

Daniel A. Ryan for Respondent.

RICHARDS, J.—This is an appeal from a judgment in the plaintiff's favor in an action for damages for an alleged assault and false imprisonment. The cause was tried before a jury, which awarded the plaintiff the sum of two thousand dollars as compensatory damages and five hundred dollars as exemplary damages.

There were four defendants other than the appellant herein who were at the time of the plaintiff's alleged injuries its employees. As to three of these—Henry Jones, M. Glennon, and John W. Lynch—a nonsuit was granted. As to the other codefendant, Charles G. Fitch, the verdict of the jury was in his favor. A motion for a new trial was made by the other defendant, United Railroads, which the trial court denied, whereupon this appeal was taken.

The alleged assault upon and imprisonment of the plaintiff from which his claim for damages arose occurred in the city of San Francisco on the evening of August 22, 1917. A strike was at that time in progress among many of the employees of the United Railroads. This strike was being resisted by the latter which, with the aid of its nonstriking employees and other persons replacing the strikers, was endeavoring to operate its cars upon the streets of said city, and also to resist assaults upon those attempting to operate its system, and to prevent threatened injury to or destruction of its cars and other property. It was a time of violence on both sides of the controversy. On the part of the strikers and their sympathizers frequent assaults were being made upon those who were replacing them upon the cars, during which weapons were freely used and missiles thrown, striking the cars, breaking their windows, and otherwise mutilating and rendering unserviceable the railroad property. On the part of the railroad vigorous efforts were being made to protect its employees from assault and its property from destruction, and otherwise to discourage the strikers, and arrest or disperse those indulg-

ing in or disposed to violent or destructive acts. The president of the United Railroads corporation had instructed his immediate subordinates to employ guards and to "spare no expense necessary to keep the cars running or necessary for the protection of passengers or the company's employees or the company's property."

On the afternoon of the day upon which the plaintiff received the injuries of which he complains Charles G. Fitch, one of the defendants herein, was employed by the United Railroads in the capacity of foreman in charge of the stables and garage of his employer located on Turk Street, between Webster and Fillmore Streets, in said city, which was at the time the headquarters of a considerable number of men who were being used as patrolmen and guards to protect the other men and the property of the corporation from acts of violence on the part of the strikers, such as rock-throwing at the cars and assaults upon their crews. Acting upon instructions from Mr. Ewing, who, as superintendent of construction and equipment of the railroad, was his immediate superior, Mr. Fitch sent out from said place at 7:30 o'clock on the evening in question an automobile in charge of M. Glennon as driver, with some six or seven other persons as occupants, some of whom were codefendants herein, with instructions, to use his own words, "to do patrol work on the street, to try and protect the property in any way they could—I would not say in any way they could, but to do anything they reasonably could to stop windows from being broken, crews pulled off cars, to help them out." This automobile with its crew of men was to operate on and in the vicinity of Haight Street. About the time of this assault the plaintiff, who it appears was an employee of a publishing house and was in no way connected with either the strikers or the defendant, was walking out Haight Street toward Scott Street, and thence to Page Street, with several friends, who were also in no way connected with the strikers or strike, on the way to the rooms of some of their number for a social evening. While passing along Scott Street, near Page, the automobile driven by the defendant Glennon, and in which were the men sent out by the defendant Fitch as aforesaid, drove up and stopped near the plaintiff and his companions, when several of its occupants got out, and laying hold of

the plaintiff, made a violent assault upon him, striking him over the head so as to render him unconscious, and throwing him into the car and holding him there, while the machine made off in the direction of the stables and garage from which it had been sent forth. Upon the plaintiff's partial recovery of consciousness he began to struggle and call for help, when he was again violently assaulted by his captors, with violent and abusive epithets; when the machine with its occupants reached the gate of the stables and garage they found it closed, but it was opened upon signal to admit the car and immediately closed again, not, however, until the plaintiff by his cries had attracted the attention of two policemen, who forced their way into the enclosure, and, taking the plaintiff from his captors, went at once with him and them into the office of the defendant Fitch. Upon arriving in the latter's presence the plaintiff's assailants accused him of being "one of the fellows throwing rocks at the Haight Street car." This the plaintiff denied as best he could in his battered condition, whereupon Fitch, apparently believing the accusation, said to the policemen, according to the plaintff's testimony: "Those fellows are there to prove it. I want to arrest this man and bring him up in court"; whereupon the policemen took the plaintiff to the emergency hospital, where he was temporarily treated, and thence to the city prison, where he was searched and locked up, remaining in jail about two hours, when he was released on bail. The next morning he was present in the police court, when it appeared that no charge had been made against him, but Mr. James F. Sheehan, an attorney regularly employed by the United Railroads, was present, and, according to the plaintiff's testimony, made the statement that "I have information that this man [referring to plaintiff] was throwing bricks at a Turk and Eddy Street car. I am not ready to prove it now. I want the case put back until Saturday morning." The plaintiff's case was accordingly continued to that time, when Sheehan again was present, and repeated in substance his former statement, with a request for a further continuance, which was granted, until the following Monday morning, when, no complaint having yet been filed, the case was dismissed. Thereupon the plaintiff commenced this action for damages for his personal injuries and for his false im-

prisonment, alleging that these acts committed against him were willful and malicious on the part of the defendants, and praying for both compensatory and exemplary damages.

The foregoing are substantially the facts of the case as they appeared at the trial. The defendants, both in their answers and in their evidence, denied that any other instructions or authority than that above set forth had been given either to the defendant Fitch or to those whom he had sent forth in the automobile on the occasion of their assault upon the plaintiff and of his capture and detention. They also denied that these acts of assault and detention were done either willfully or maliciously by the defendants or by their authority so as to entitle the plaintiff to exemplary damages. The jury, however, returned a verdict in the plaintiff's favor for both forms of damage as above set forth. .

[1] The first contention urged by the appellant is that the evidence is insufficient to show that the United Railroads ever authorized the occupants of the machine or any of them to assault or imprison the plaintiff. We are unable to sustain this contention. The time of the duration of the railroad strike, which had been in progress for some eleven days prior to the date of the plaintiff's injuries, was, as we have said, a time of violence, during which the employees of the railroad were being frequently attacked, and its cars were being fired upon and struck with stones and other missiles, to their great damage, in some cases well-nigh destruction. In resisting a strike attended with violent acts of this character it became necessary for the railroad to employ many persons to act as patrolmen and guards for the protection of their nonstriking employees and such of the traveling public as might have the hardihood to become its passengers, and of their cars and other property from destruction. It may be said incidentally that the employment of these persons for the above express purposes had also as its more or less essential purpose that of discouraging and rendering ineffectual the strike itself. Under these conditions and with these objects in view the president of the corporation issued the general order to his subordinates above set forth. It was under this general instruction that there had been

assembled at the stables and garage of the corporation on
Turk Street a company of approximately one hundred men,
who were to act under the direction of Charles G. Fitch,
foreman in charge there, as patrolmen and guards. It was
also under this general instruction of the president of the
corporation that Mr. Ewing, Fitch's immediate superior in
authority, acted in instructing the latter to send forth
the automobile with its driver and occupants to patrol
Haight Street between Market and Stanyan Streets a
short while before the assault upon the plaintiff. The im-
mediate reason for sending this party of seven or more
patrolmen and guards to this region was that violent at-
tacks upon the railroad servants and cars were being made
or threatened in that immediate vicinity at the time. The
object of thus dispatching this body of men to the scene of
existing or impending turmoil is a matter of easy inference.
They were sent there by Mr. Fitch, under the most favor-
able statement of his instructions as testified to by him-
self, "to do anything they reasonably could to stop win-
dows from being broken, crews pulled off, to help them out."
It cannot be conceived that under these instructions those
men arriving at the scene of disorderly action would be
expected by their superior to confine themselves to merely
remonstrating with the strikers or their sympathizers, to
the use of moral suasion as the most reasonable means
of preventing violent attacks upon the railroad's employees
or property. The objects of their engagement and presence
at the point of disturbance could not thus have been at-
tained. It was clearly within the scope, if not within the
express letter of their employment that they should meet
force with force, and that finding a striker or his sympathizers
in the act of attacking their employer's servants, or throwing
stones or other missiles at its cars, they should do whatever
the occasion required to put a stop to his unlawful activi-
ties and prevent a recurrence of them upon his part. Armed
with these implied if not express powers, this body of men
came upon the plaintiff just off Haight Street, and, ap-
parently acting upon the mistaken belief that he was one of
those who had been but recently engaged in stoning their em-
ployer's cars, undertook to put a stop to his pernicious
activities and to have him put in jail for his unlawful acts.
They proceeded, therefore, to take him into custody. It is

true that they were utterly mistaken in regarding him as one of the strikers or as one of their sympathizers or allies in the attack.   It is true also that their methods of achievement of their object and their method of arrest were ruffianly and inexcusable, but they were, nevertheless, acting within the scope of their authority regardless of the fact that they were mistaken as to the identity and guilt of their victim.  (*Johnston* v. *Chicago etc.*, 130 Wis. 492, [110 N. W. 424]; *Robards* v. *P. B. Pipe Works*, 130 Ky. 380, [132 Am. St. Rep. 394, 18 L. R. A. (N. S.) 923, 113 S. W. 429]; *Conchin* v. *El Paso etc. R. R. Co.*, 13 Ariz. 259, [28 L. R. A. (N. S.) 88, 108 Pac. 260]; *American Express Co.* v. *Patterson,* 73 Ind. 430.)

The cases which are cited by the appellant as sustaining its above contention do not support it, since in each of said cases the act of the employee was clearly outside of the scope of his authority.   The case of *Rahmel* v. *Lehndorff,* 142 Cal. 681, [100 Am. St. Rep. 154, 65 L. R. A. 88, 76 Pac. 659], is a fair sample of these.   That was a case where the plaintiff was a guest at the defendant's hotel, and while seated at the dinner-table was assaulted and beaten by a dining-room waiter.   Mr. Chief Justice Beatty, in deciding the case, very aptly said: "By the general law of master and servant a master is not liable for the malicious torts of the servant committed outside the scope of his employment.  *The wrongful act must be one which the servant is empowered under some circumstances to do.*"

So in the case at bar, we think that if these employees of the railroad had come upon the plaintiff while in the act of stoning their employer's cars or immediately thereafter they would have been authorized by the nature of their employment to put a stop by force, if necessary, to his pernicious activity, and take him into custody for the purpose of turning him over to the authorities, and this being so, the fact that they were mistaken in his identity as a wrongdoer does not affect their employer's liability for their acts.

What we have said above applies also to the appellant's next two contentions, since we are satisfied that the evidence sufficiently shows that the arrest and detention of the plaintiff by his captors at Scott Street, and by the police officers within the appellant's quarters on Turk Street, were au-

thorized and ratified by the action and direction of the appellant's foreman, Mr. Fitch, under the belief that the plaintiff had been guilty of stoning the cars of his employer. The case of *Lezinsky* v. *Street Ry. Co.*, 88 Fed. 437, [31 C. C. A. 573], is not authority for the appellant's contention in the above regard, for the reason that the acts of the employee in that case were clearly beyond the scope of his employment, and hence the liability of his employer depended solely upon its subsequent ratification of his unauthorized act, which is not the case at bar.

[2] The next contention of the appellant has reference to the alleged error of the trial court in giving two certain instructions with respect to the liability of the appellant for the acts of its employees done within the scope of their employment, but in excess of their express direction. These instructions appear to have reference to that margin of excessive zeal which not infrequently attends the execution of an employer's instructions, but does not lie beyond the scope of his employment, as, in the case at bar, if, as we have held, the appellant's employees were acting within the scope of their authority in taking into custody a person believed to be guilty of unlawful acts, the fact that they did so with undue violence or with opprobrious and insulting forms of speech would not absolve their employer for their wrongful action in the course of making the arrest. (*Turner* v. *North Beach etc. R. Co.*, 34 Cal. 599.)

The next contention of the appellant is that the court erred in giving the instructions which it gave upon the subject of exemplary damages. The appellant's objection goes not to the form or substance of these instructions, but is based upon its claim that as against this appellant there is no sufficient evidence of malice or oppression to justify any verdict for exemplary damages, and hence the instructions upon that subject should not have been given.

It is sufficient to say that as to both the appellant and its codefendant Fitch the question of the right of the plaintiff to exemplary damages was an expressly pleaded and hotly contested issue in the case, and this being so, we think the case ought not to be reversed because such an instruction was given, even if we should conclude upon a close examination of the law and facts of the case that

there was not sufficient evidence to uphold the verdict against this particular appellant for exemplary damages.

[3] This brings us to the precise question as to whether or not there was sufficient evidence in this regard to have justified any verdict against this appellant for such damages.

Without undertaking to recite or review *in extenso* the evidence in this case, we deem it sufficient to say that in our opinion there is no sufficient evidence of malice, fraud, or oppression on the part of this appellant against the plaintiff herein to warrant a verdict for exemplary damages in any sum. As between this plaintiff and this appellant no relation whatever is shown out of which any imputation of actual ill will or malice could arise; nor is there a particle of evidence of personal ill will or malice as between any of the appellant's officers, agents or employees and this plaintiff. He was apparently unknown to each and every one of them up to and including the moment of his assault and detention; nor is there a particle of evidence that in making such assault and detention his captors and assailants bore toward him any other ill will or malice than they or any of them would have nourished and manifested toward any other person actively engaged in the unlawful diversion of destroying the property of their employer. That they may have acted with unnecessary force and violence in assaulting and arresting the plaintiff would not suffice to justify a verdict against this appellant for exemplary damages in the absence of a showing that the superior officers of the corporation, having authority to bind it by their directions to its subordinate employees, had either expressly sanctioned these excessive acts of violence, or had subsequently ratified the same with a full knowledge of their unlawful extent and character. It is, however, claimed by the respondent that there is sufficient evidence of such ratification as will suffice to uphold the verdict for exemplary damages rendered against the appellant herein, and that it is to be found in three distinct forms in this record. The first of these is in the evidence of the action of the defendant Fitch when the battered and bloody plaintiff was brought into his presence by his captors and assailants. There is no proof that Fitch had any prior or other knowledge of him or bore any ill will or malice toward him than

that engendered by the assertions of his subordinates that he had been seized and brought into his presence as one guilty of stoning his employer's cars. Had he been so guilty the action of Fitch in insisting upon his further arrest and punishment at the hands of the public officers and administrators of justice would have been justified, and could not be urged as any evidence of either ill will, fraud, oppression, or malice, either chargeable to him or imputable to his employer.

The second set of facts upon which the respondent relies refers to the acts and conduct of James F. Sheehan, one of the appellant's attorneys, in court on the following day and the next two or three days, wherein he sought to have the plaintiff held for trial upon the charge of stoning the cars of the appellant. The action of said Sheehan in that regard cannot, however, be held to amount to a ratification of any prior wrongful acts on the part of the appellant's other employees so as to render it liable in exemplary damages, for the twofold reason that as an attorney at law the said Sheehan had no authority to bind the appellant to a ratification of any such acts, and that even if he had been shown to possess such authority, he is not shown to have acted with full or any knowledge of the said wrongful acts which it is claimed were ratified by what he said and did on those occasions.

The third set of facts upon which the respondent bases his claim of right to exemplary damages founded upon the alleged ratification of the acts of Fitch and his subordinates, consists in the showing that said Fitch was subsequently advanced by the appellant to a superior position in its employment after the appellant is claimed to have had full knowledge of the circumstances, extent, and gravity of the plaintiff's injuries. We are satisfied, however, that the advancement of said Fitch, depending, as it well might, upon conditions entirely removed from any connection with plaintiff or his case, could not be sufficient in itself to give rise to an inference that said Fitch had been advanced as a mark of approval or by way of reward for his acts and conduct in relation to the plaintiff's assault and arrest.

Our conclusion, therefore, is that there was no sufficient evidence in this case upon which to base the verdict rendered therein against the appellant for exemplary damages

in any sum.  In arriving at this conclusion we have given
particular attention to the case of *Davis* v. *Hearst*, 160 Cal.
143, [116 Pac. 530], and to the very full discussion therein
contained as to the application to be given to the provisions
of section 3294 of the Civil Code, and as to the principles
controlling the proof and finding of such actual ill will,
malice in fact, evil motive, or malignant fraud or oppres-
sion, as will suffice to sustain a verdict for exemplary dam-
ages.  [4] It is to be remembered that this appellant is
a corporation, and while it is undoubtedly the law that a
corporation may become liable in exemplary damages where
an act of one of its employees, done in ill will or in actual
malice or under circumstances of fraud or oppression, is
done with the knowledge or under the express direction of
its superior officials having power to bind the corporation, or,
if done without such knowledge or direction, is thereafter
ratified by such officials, with full knowledge as to the will-
ful and malicious quality of such acts, no such conditions
are presented by the evidence in the case at bar.

It follows that the judgment must be modified by striking
therefrom the specific portion thereof which awards exem-
plary damages to the respondent.

[5] This brings us to the final contention urged by the
appellant, which is that since the jury by its verdict in
favor of the appellant's codefendant, Fitch, exonerated the
latter from liability for the injuries of which the plaintiff
complains, it must necessarily be held to have also exoner-
ated the appellant as the employer of Fitch from liability
for his acts as its employee.  In making this contention the
appellant relies upon the case of *Bradley* v. *Rosenthal*, 154
Cal. 420, [129 Am. St. Rep. 171, 97 Pac. 875], and *Thompson*
v. *Southern Pac. Co.*, 31 Cal. App. 567, [161 Pac. 21], and
also upon certain cases cited from other jurisdictions.  These
cases are, however, distinguishable and are in fact distin-
guished from the case at bar under the authority of *Benson*
v. *Southern Pac. Co.*, 177 Cal. 777, [171 Pac. 948], wherein
it is stated that where the act of the employee was one for
which the employer was liable only under the application
of the rule of *respondeat superior*, the doctrine laid
down in *Bradley* v. *Rosenthal* and the other above-cited
cases might be applied; but that the principle invoked in
those cases was not to be given application to a case where

the employee was acting under the direction of his employer, who was therefore liable not merely under the rule of *respondeat superior*, but rather as a joint participant in the acts complained of, as where the act was that of an employee of a railroad in running a train at a negligent rate of speed, and was done under the rules of the railroad requiring such a speed. This principle and the case of *Benson* v. *Southern Pac. Co.*, *supra*, which sustains it, have application, in our opinion, to the facts of the case at bar. The defendant Fitch, in sending forth patrolmen and guards, who wrongfully assaulted and falsely imprisoned the plaintiff, was acting under the general directions of the superior officials of the appellant, which directions, under the circumstances · attending their issuance, were broad enough to contemplate the use of force and violence if necessary in repelling the assaults of strikers or their sympathizers upon those operating the appellant's cars, or in arresting such of these as were injuring or destroying its property. In carrying into effect these instructions Fitch and his underlings were but obeying orders, and if they exceeded their duty in so doing through a mistaken excess of zeal their principle would be liable not merely under the doctrine of *respondeat superior*, but as a joint participant in their wrongful acts.

We think that any further points urged by the appellant are covered by the foregoing discussion.

The judgment will be modified by striking therefrom the item of five hundred dollars assessed as exemplary damages, but as to the other items thereof will be and is hereby affirmed, each party to pay. its costs upon this appeal.

Kerrigan, J., and Wood, P. J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 21, 1921.

All the Justices concurred, except Lennon, J., who voted for granting of petition.