**CANADIAN INDEMNITY COMPANY, a Corporation, Appellant,**

v.

**OHIO FARMERS' INDEMNITY COMPANY and Prudential Assurance Company of London, Appellees.**

No. 15335.

United States Court of Appeals Ninth Circuit.

Jan. 15, 1958.

Rehearing Denied March 10, 1958.

Edward A. Friend, San Francisco, Cal., for appellant.

Leo J. Walcom, Derby, Cook, Quinby & Tweedt, Stanley J. Cook, Lloyd M. Tweedt, San Francisco, Cal., for appellees.

Before DENMAN, POPE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Virginia Christensen on November 29, 1955, recovered a judgment pursuant to a verdict for $35,000 in the Superior Court of the State of California in and for the County of Alameda for personal injuries she suffered on September 17, 1954, when she fell, stumbled or tripped over a case of bottled water negligently left or placed in an aisle of a grocery store in Oakland. The judgment ran against the Louis Stores, Inc., proprietor of the store, and Clifton Land, its grocery clerk. The jury exonerated a third defendant, one Earl Correia, who was the manager of this one store, part apparently of a small chain of such stores. This judgment (which we shall refer to as the Alameda judgment) has not been paid. There is ample public liability insurance outstanding, but three insurance carriers cannot agree among themselves as to who should pay the judgment. With that problem we are here concerned.

The reason for the presence of this case in federal court is diversity of citizenship. The plaintiff carrier, The Canadian Indemnity Co., is organized under the laws of the Dominion of Canada. One of the defendants is the Ohio Indemnity Company organized under the laws of Ohio. The other defendant is Prudential Assurance Company Limited of London, a Lloyd's company. Canadian's policy limit is $100,000, Ohio's limit is $10,000 and Prudential's limit is $40,000. All three expressly insure Louis Stores, Inc.[1] Without reaching the disputed question yet as to whether Land was an "insured," we can say that there were provisions in an endorsement to the Ohio policy (effective therefore in the Prudential of Lloyd's policy) which "make reference" to employees of Louis Stores, Inc., of whom Land was one. On the other hand, Canadian's policy does not have an employees' endorsement.

The Ohio and Prudential[2] policies are carefully keyed into each other.[3] The Prudential is definitely "excess coverage" at least as to Ohio. Later herein we shall come to some of the language of the policies. The question in this declaratory judgment action is whether there is any liability of Canadian on the facts here, and, if so: Where in the layers of liability does it fall and for how much?

1. In a second Lloyd's policy an unidentified group of Lloyd's underwriters were involved with second phase excess coverage. They escaped here because the limits where their coverage began could not possibly be reached by the $35,000 judgment Mrs. Christensen obtained. They are not parties to this appeal.

2. The Prudential policy expressly mentions the Ohio coverage, referring to Ohio as "primary insurer."

3. The policy issued by Swett & Crawford which fixes the liability, if any, of Prudential provided by Endorsement No. 3: "In consideration of the premium charged, it is understood and agreed that wherever the assured has contracted to protect any individual, firm, or corporation by insurance such individual, firm or corporation shall be deemed an assured under this policy but the liability of the underwriters as respects such individual, firm, or corporation shall be limited to the amount of insurance contracted to be carried by the assured but in no event shall such liability in the aggregate exceed the underwriters' limit of liability as expressed in this policy. It is understood, however, that this policy does not insure any individual, firm, or corporation whose operations or business is not incidental or necessary to the business of the assured herein named."
This court is of the opinion that this endorsement means that to the extent Land was insured or protected by Ohio then Prudential was on the risk in the same identical manner but only as to excess.

The trial court, the United States District Court for the Northern District of California, was of the opinion that Prudential was "excess" as to both Ohio and Canadian, that Prudential would be obligated after Canadian's $100,000 and Ohio's $10,000 had been consumed. The $35,000 liability was assessed pro-rata, one-eleventh against Ohio and ten-elevenths against Canadian. Thus Prudential escaped entirely.[4] Canadian appeals. We affirm.

The issues of the companies here converge around two of Canadian's contentions:

1. That clerk Land was an insured (as well as Louis the named insured) in Ohio's policy by virtue of endorsement No. 4 on Ohio's policy and Land was not "insured" or "an insured" under Canadian's policy.

2. That the liability established in the Alameda judgment as to Louis Stores, Inc., was vicarious for Land's negligence, that is to say: respondeat superior.

To how the contentions above arise, their validity and their significance, this opinion must now go. Apparently, Ohio and Prudential, through a broker, contracted with Louis Stores, Inc., and issued their policies. On the face of the Canadian policy one Tom Piperis, the Louis landlord, is named as the insured. But by an endorsement Louis Stores, Inc., as to the premises where Mrs. Christensen was injured was also made a named insured. If Land was an "insured" under Ohio's policy (and therefore Prudential's) he was not so designated by name. Practically, he had some protection under it, but was it "his?" The application to him arises under Ohio's typewritten endorsement No. 4 entitled "Defense of Employees" and which reads as follows:

"1. The company will defend, if and when requested in writing to do so by the Named Insured in the name and on behalf of any employee of the insured, any suit alleging Bodily Injury, death or any set covered by this policy or any endorsement attached thereto, and will pay all costs taxed against such employee in any suit, provided, however, that the Named Insured either is joined or if not joined, could properly have been joined as defendant in such suit, and provided further, that the suit either is one which this company is obligated under said policy to defend on behalf of said Named Insured, or is one which this company would have been so obligated to defend if said named insured had been joined as a defendant.

"2. The Company will also pay any loss by liability imposed upon any said employees by final judgment in any such suit and will pay all interest accruing after entry of said final judgment upon such part of same as is not in excess of the Company's limits of liability as specified in the Declarations.

"3. It is understood and agreed that this Policy of Insurance is a contract between the Ohio Farmers Indemnity Company and the Named Insured and that nothing herein shall be construed as creating any privity of contract between the Ohio Farmers Indemnity Company and any employees of the Named Insured, nor shall this paragraph [endorsement][5] confer any rights upon said employees which said employees would not have had if this paragraph had not been written.

"4. It is further understood and agreed that anything herein above or elsewhere contained or expressed to the Contrary notwithstanding, the Company will under no circumstances whatsoever provide Coverage except where the act of the employee was committed in good faith

4. Canadian Indemnity Co. v. Ohio Farmers Indemnity Co., D.C., 140 F.Supp. 437.

5. The parties seem to agree that the word "paragraph" is an error and that the word "endorsement" obviously was meant instead. In the absence of agreement, this court would so hold.

and is within the scope of employment.

"5. The insurance provided by this endorsement shall be excess insurance over any other valid and collectible insurance available to any employee of the Named Insured."

Upon the projection that Ohio and Prudential cover Louis Stores, Inc., and Clifton Land, and that Canadian covers only Louis Stores, Inc., the underlying assumption of Canadian (that is, the reason for attaching so much importance to respondeat superior) is this: If Canadian were to pay Mrs. Christensen because her judgment runs against its assured, Louis Stores, Inc., then Canadian would be subrogated to the rights of Louis Stores, Inc. And, traditionally where there is respondeat superior liability, the master, forced to pay, has a right of recovery over against the employee. So Canadian paying for Louis Stores, Inc., would be entitled on subrogation to the benefit of Clifton Land's insurance. Then the last link in the chain is: Let's short-cut the roundabout chain and have Ohio and Prudential pay the judgment now. If all of the links are good until the last one, this court agrees that the last one is good. No useful purpose would be served if Canadian paid and could immediately recoup from Ohio and Prudential. The latter two may as well pay in the first instance.

To consider the foregoing arguments we must go back to the Alameda proceedings and judgment. The verdict against Louis Stores, Inc., and Clifton Land gives no clue as to whether Louis Stores was held vicariously with Land or whether it was held as an independent tort feasor, each defendant being negligent in his duty with the negligence of each concurring to cause the accident.[6] The latter tenet would mean that they were joint tort feasors.

The matter not being settled by the verdict and judgment, suppose one backs up further. The Alameda court submitted to the jury alternate forms of verdict which permitted it to find Louis Stores, Inc., Correia (the manager), and Land all liable, any one, any two, or none. So, the forms of verdict submitted throw no particular light on the verdict.

■ Keeping in mind the point above that joint negligence can arise in employee performance where the negligence is in accordance with directions—the employer's instructed pattern of doing business—we turn to the Alameda instructions.

So far as extracted for the United States District Court the instructions read as follows:

a. "You may find a verdict in this case against the defendant Louis Stores Inc., and not necessarily against the defendant Land, who at all times complained of was the servant of the master Louis Stores Inc. If you find that the defendant Land was acting at all times under the direction, express or implied of his master Louis Stores Inc., then his actions were those of his master, even though performed by the servant.

"However such fact would not excuse either def[endan]t Land or Correia from liability to pl[aintif]f for an act or omission of his amounting to negligence on his part, from which pl[aintif]f suffered injury as a proximate result, provided pl[aintif]f was herself free from any cont[ributory] negligence."

b. "If you should find that plaintiff is entitled to recover against more than one defendant, you may not allocate the damages among them, but must deliver a verdict in one, single sum against all defendants whom you find to be liable."

We think there is a little of respondeat superior and a little of joint negligence in these instructions. At least, we cannot

---

6. See Bradley v. Rosenthal, 154 Cal. 420, 97 P. 875; Thompson v. Southern Pacific Co., 31 Cal.App. 567, 161 P. 21; McInerney v. United Railroads, 50 Cal.App. 538, 195 P. 958.

say one excludes the other. Furthermore, the district court knew not what other instructions, if any, on negligence were given in Alameda. Therefore, we cannot know.

We turn next to the Alameda complaint. There Virginia Christensen said of Louis Stores, Inc., Land and Correia:

"VI. At all times herein mentioned defendants, Earl Correia, Clifton Land * * * were agents, servants and employees of defendant Louis Stores, Inc., * * * and were acting in the course and scope of their employment and agency * *.

"IX. At said time and place defendants, and each of them, so carelessly and negligently operated, maintained and controlled said market and said grocery department therein and said aisle open to the public therein so as to cause and permit a cardboard carton to be in said aisle in said grocery department in such manner so as to render said aisle dangerous to the passage of customers and business invitees in said market and said grocery department thereof lawfully using said aisle.

"X. As a direct and proximate result of said carelessness and negligence of defendants, and each of them, as aforesaid, plaintiff was caused to trip and fall over said cardboard carton in said aisle and as a direct and proximate result of said fall in said aisle as aforesaid plaintiff received the injuries and damages hereinafter set forth."

There was no alternative statement within the one count, claim or cause of action; nor were there alternative separate statements of counts, claims or causes of action on each of the two possible theories: respondeat superior and "directional" joint negligence. The allegation that Land was acting within the scope of his authority doesn't exclude the possibility of joint negligence, each liable in his own corner. If the pleading leans either way, it probably lists to the side of joint negligence. We do not so decide.[7]

Take the next step. Examine the evidence. Our trial judge had only the testimony of Land and Correia. (A dozen witnesses may have shed further light on the negligence of Land. It is no answer to say as appellant does, that no other witnesses were called in the behalf of these two individual defendants by counsel appearing for them.)[8] We think that support for either theory can be found in the testimony. And even one could plausibly argue that out of this testimony one could find respondeat superior negligence and joint negligence of Land and Louis Stores, Inc., all converging on Mrs. Christensen. But appellant Canadian answers, "The jury exonerated Correia. Negligence other than Land's would have had to be Correia's."[9] That does not

7. No party has argued that there is any limit to which the Alameda proceedings may be explored to find out what was decided. Accordingly, our examination of the available Alameda record has not been limited. In some cases a nice question arises as to how far back of a judgment one may probe to ascertain what was decided in the prior case. Apparently estoppel by judgment (not estoppel in fact) is involved here rather than res judicata. A fine discussion of this subject by Circuit Judge Learned Hand may be found in Evergreens v. Nunan, 2 Cir., 141 F.2d 927, 152 A.L.R. 1187.

8. We do not suggest, we do not know that the result would have been different if the whole record from Alameda had been produced. Probably by requests for admissions, by stipulations without or under pretrial proceedings the absence of other relevant testimony could have been established in the district court with little additional expense. As it was, the Alameda proceedings brought to the district court in snatches had an open end.

9. In a way all negligence liability of corporations is vicarious because it can act only through agents. But one cannot say without California authority so announcing that all corporate negligence is respondeat superior negligence of a named or unnamed individual or group of individuals. There is a rubbery field of actual corporate negligence involved in "company policies," not pinnable on any individual, where there is a duty to act or not to act. In such may be company pol-

settle it either. If negligence had been attributed to Correia, it probably would have been respondeat superior negligence, because he was not at the store when the injury occurred and had no affirmative part in the sequence of placing the stumbling block in Mrs. Christensen's way. We suspect the jury may have thought Correia didn't have enough authority to keep adequate help on the job to keep temporary obstructions out of the aisles. It may have thought the safety instructions he had passed on to employees went only through him as a conduit from top management.

We have taken more words, but we come to the same conclusion as the trial judge: Who knows what the Alameda decision was?

■ Of course, in negligence where two are held independently liable there is usually no recovery over, one against the other.[10] That is a rule of negligence. It may well be that in the law of principal and agent, the agent following the principal's directions can recover from the principal if the agent too is held liable. Suppose that the employer knowing his truck's brakes are defective sends out his employee, who also knows of the defect, on the public streets with the truck. The injured public would have a right against each—the employer and the employee. We would think the law ought to give the employee a right over against the employer in such a case, unless perhaps the employee is caught by another rule: driving with bad brakes on a public highway is ordinarily illegal and illegality might result in parties being left where found. At least, there is no authority extant in such an example for the employer to recover from the employee.[11]

We do not decide the point of whether Land was a named insured. And we are not sure that the point is correctly stated. We would approach the same subject matter this way: Suppose Mrs. Christensen filed her Alameda suit against Louis Stores, Inc., and Land. Suppose Louis Stores, Inc., was a foreign corporation and had left the state. Service was obtained on Land with her complaint which we assume alleged respondeat superior negligence only. Judgment followed, but Land was not financially in the $35,000 class. Wouldn't a California court make Ohio and Prudential pay Mrs. Christensen even though Louis Stores, Inc., was indifferent about the whole matter? If California would so require, we think, assuming respondeat superior, Canadian might then achieve the same rights as if there were no question that Clifton Land definitely and expressly had been listed by Ohio by name as insured.

■■ We return now to the respondeat superior facet. Before Canadian

---

icies not to sweep floors during business hours because sweeping interferes with selling, or the deliberate or careless choice to take the risk of not having persons on duty of high enough authority (or sufficient number of employees) to remove obstructions from aisles.

10. Appellant contends our decision in American President Lines, Ltd. v. Marine Terminals Corp., 9 Cir., 234 F.2d 753, is authority to shift the burden from Louis Stores, Inc., to Land. Its argument is that Land's negligence was active and the storekeeper's, if any, was passive. Ofttimes indemnity may be had from the active tort feasor by the passive tort feasor who pays. But we find no reported case where the employer told the employee "how to do it," and the employee implicitly followed instructions, holding the employer may recover from the employee.

There may be several concepts in this directional negligence. One may be that employer's negligence is a continuing active one right up to the injury. Or it may be the contention urged by one appellee of "qui facit per alium facit per se"— he who does it through another does it himself. The latter approach probably usually conceives of the negligence in (directed negligence) as one cause or act for which two people are jointly liable, rather than the concept of negligence of the employer in directions and the negligence of the employee (he, having a duty to the public) because he followed the directions, setting up separate causes which act concurrently, therefore create a joint liability.

11. Cf. Howe v. Buffalo New York and Erie Railroad Co., 37 N.Y. 297.

could shift the entire burden, respondeat superior negligence should be shown, even if we were to treat Land as a named insured. Without respondeat superior Canadian fails. Was Canadian entitled to any presumption? Canadian suggests that the ordinary rules of burden of proof do not apply in declaratory judgment actions. That is an extensive question. At least, we are confident in saying that when Canadian here brought the other parties into court it had the burden of *going* forward and the burden of making a prima facie case.[12] The latter we hold it did not do.

We think there is a serious question as to whether the trial court should have granted any relief at all because one can never be sure of just why the verdict went against Louis Stores, Inc., and Land. But Canadian has rested its whole case on the alleged incorrectness of the finding of the trial court that Land was not insured and the finding that the trial court was unable to determine how the liability arose were incorrect. It has not attacked the subsequent findings made which divide the liability one-eleventh and ten-elevenths.[13] If it had succeeded in the attack it made, then the subsequent findings and conclusion would fall with their basis gone.

We do not hold that if the point had been made that no relief should have been granted we would have sustained it. Here we cannot reach it. But suppose no relief should have been granted, is Canadian any worse off by the judgment herein than if the parties had been left in the jungle with no relief? It is not our duty to consider such a problem. But we can digress to ask the question.

■ Insurance companies are entitled to have their contracts enforced as are other people. But they sell a commodity which is in its very essence words. They naturally must run risks of self inflicted casualties when they do not service their

12. Cf. Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 9 Cir., 178 F.2d 541, 546.

13. The Ohio and Canadian policies provided as to other insurance:

Ohio's—

"Other insurance—If the Insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the use of any non-owned or hired automobile shall be excess insurance over any other valid and collectible insurance available to the Insured, either as an Insured under a policy applicable with respect to such automobile or otherwise."

Canadian's—

"Other Insurance—If at the time of an accident there is any other insurance available to the insured (In this or any other carrier) there shall be no insurance afforded hereunder as respects such accident except that if the applicable limit of liability of this policy is in excess of the applicable limit provided by the other insurance available to the insured this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by *this* policy. It is further provided that in respect of loss arising out of the operating, maintenance or use of any non-owned automobile other than a hired automobile, the applicable insurance afforded by *this* policy shall be excess over and above such other available insurance. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured."

The trial court held the foregoing clauses mutually repugnant. It placed Canadian and Ohio together on the first layer and pro-rated in accordance with the policy limits. Further, it held that Prudential was excess to both primary carriers. Therefore, Prudential's contingent liability was not reached. Reliance was placed upon Air Transport Mfg. Co. v. Employers' Liability Corp., 91 Cal.App.2d 129, 204 P.2d 647 and Oregon Auto Insurance Co. v. United States Fidelity & Guaranty Co., 9 Cir., 195 F.2d 958. See also Employers' Liability Assur. Corp. of London, England v. Pacific Employers Insurance Co., 102 Cal.App.2d 188, 227 P.2d 53.

policies to the extent of ferreting out other coverage with repugnant or inconsistent clauses. When the loss occurs and a court must resolve inconsistencies any result reached may have some aspect of injustice. On the other hand, there is an equally valid thought that all the companies who permit the inconsistencies to exist have no right to complain of results fairly arrived at by a court.

Affirmed.