[Civ. No. 17571.   Second Dist., Div. Two.   May 25, 1950.]

JOHN J. ALTERAUGE, Respondent, v. LOS ANGELES TURF CLUB (a Corporation) et al., Appellants.

Victor Ford Collins for Appellants.

C. Ransom Samuelson for Respondent.

MOORE, P. J.—Respondent sued for "wrongful arrest." He was awarded $300 compensatory damages against all defendants, $2,000 exemplary damages against the corporation and $750 against the latter's agents. A motion for a new trial having been denied, the matter was transferred to this court on appeal.

The corporate defendant operates Santa Anita Park, a race track which engages in pari-mutuel wagering pursuant to the California Horse Racing Act. (Bus. & Prof. Code, § 19400 et seq.) At the time herein mentioned the club employed the Security Service Agency, a copartnership composed of appellants Williams and Rhyn, who in turn employed appellants Marshall and Dietz to perform the actual service of policing the club's grounds, including the placing of respondent under surveillance.

Respondent having paid for his admission to the clubhouse on January 5, 1946, remained until the end of the seventh race. Then, feeling ill, he withdrew and seated himself in an automobile on the parking lot. He was there approached by Dietz and Marshall who stated to him that they were track detectives in the employ of the Turf Club and demanded to know the name of the owner of the automobile in which he sat. Upon his refusal to give the information, they requested him to accompany them to the inside of the clubhouse. He declined to do so saying that he preferred to remain in the car. "No," said the two men, "you are going into the place, we have got to take you." Thereupon they pulled him out, tearing his coat, and forced him to accompany them to the office of the clubhouse where he was searched for evidence of bookmaking. He was questioned by Messrs. Patton and Pugh, employees of Security Service, detained for about 15 minutes and then released with instructions never to return to the track.

In demanding a reversal, appellants contend that the evi-

dence is insufficient to justify any verdict against them. They assert that under rule 355* of the Racing Board it was their duty to police the grounds of the club and to eject therefrom known undesirables and persons of immoral character as well as others whose presence is forbidden by the rule; that in the performance of such duties they were privileged to detain respondent for a reasonable investigation by reason of the fact that his presence there was interfering with their valuable property right, to wit, their license to operate a track. Such contention they assert is based upon sections 19460 and 19461, Business and Professions Code, which provide that their club license might be suspended or revoked in the event that the Racing Board should "believe that any condition of its license has not been complied with."** They assert also that they are required by section 53, Civil Code, to exclude from the Turf Club's premises any person of immoral character. Under authority of such statutes appellants contend that by virtue of the uncontradicted evidence of respondent's having been convicted of various crimes and having served in the penal institutions of several states it was their duty to exclude him from the club's grounds or imperil its license for conducting the race course.

It is true that ordinarily the owner of property in the exercise of his lawful right to protect it may detain a person who seeks to interfere with or injure such property a reasonable length of time for the purpose of investigation in a reasonable manner. (*Collyer* v. *S. H. Kress & Co.*, 5 Cal.2d 175, 180 [54 P.2d 20].) ■ But was respondent detained and

---

*(Authorized by Bus. & Prof. Code, § 19561.) "An Association conducting race meetings under license from the Racing Board shall properly police its grounds, including the stable area, and shall eject therefrom known undesirables, touts, persons under suspension or ruled off, persons of lewd or immoral character, and persons guilty of boisterous or disorderly conduct or other conduct detrimental to racing or the public welfare. The association shall report to the Racing Board each day a list of persons ejected, showing reason for ejection."

**Section 19460, Bus. & Prof. Code: "All licenses granted under this chapter are subject to all rules, regulations and conditions from time to time prescribed by the board and shall contain such conditions as are deemed necessary or desirable by the board for the purposes of this chapter."

Section 19461, Bus. & Prof. Code: "All licenses granted under this chapter are subject to suspension or revocation by the board in any case where the board has reason to believe that any condition of its license has not been complied with or that any law or any rule or regulation of the board has been broken or violated."

investigated in a reasonable manner? The jury decided that he was not, and by denying the motion for a new trial, the court below held that the jury's verdict was justifiable. It is true that respondent had committed a number of crimes; had been arrested several times beginning in his boyhood for misdemeanors and for felonies, but he had entered the premises of the club as a peaceable and law-abiding citizen. He had done nothing unlawful while on the grounds, but at the time of his arrest was languidly reposing in an automobile out of the presence of all patrons of the club and at some distance from its gambling paraphernalia. Having been removed by force from the automobile he was compelled to visit the Security office without being advised as to the purpose of the visit; conducted thither by force and threats without a warrant, without being accused of a wrongful act and without being placed formally under arrest. He was there "frisked" for guns and weapons, his wallet examined and vainly searched for evidence of bookmaking. He was suspected of the latter solely by reason of the testimony of Dietz to the effect that respondent had been wandering about the clubhouse talking with another gentleman and not going to the betting windows. Dietz had not seen plaintiff take a bet or do any other act in violation of the rights of the club. There was no good reason to detain and investigate him by reason of his personal history. His record was known to the Security office. One of its investigators had worked at Hollywood Park in September, 1945, and had there detained respondent and questioned him for 45 minutes concerning his background but had taken no action toward evicting him from that race course. Also, he had visited Santa Anita only a few days previous to the date involved herein at which time he was trailed by one Patton who testified that he overheard a conversation wherein respondent stated that he desired to do some bookmaking at Santa Anita.

It is thus seen that appellant knew previously all facts concerning which they questioned him on January 5. If they had been in good faith and desired merely the exclusion of respondent from the club grounds, they could have informed him at the time of his first visit of the management's determination to forbid his presence there. Knowing his record prior to the visit and having had an opportunity to forbid his presence at the race course, his detention was unreasonable. Not only were the facts fully developed but the jury were correctly instructed that probable cause is a suspicion founded

upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true and that if the defendants or their agents had reasonable grounds to believe that plaintiff was violating its rules then there was proper cause for the detention of the plaintiff for a reasonable time and in a reasonable manner for the purpose of investigation.

In addition to the fact that respondent was taken forcibly from the automobile, it was established that he was pulled along the walk until they arrived at the front of the clubhouse. There he consented to visit the Security office. He was never taken before a magistrate or at any place arraigned under any form of accusation, but was forbidden to return.

In view of such proof it cannot be said that the jury acted arbitrarily in awarding damages to respondent or that the trial court abused its discretion in denying a new trial. He was not only the victim of a wrongful arrest and detention but he was the victim of an unjustified battery for all of which the compensatory damages awarded were not unreasonable. Reasonable and civil treatment of respondent necessitated a previous demand upon him not to enter the club grounds. Instead of doing this they subjected him to indignities that humiliated him, made him nervous and to suffer from ulcers. Their conduct was reprehensible. Their knowledge of him was complete. They gained nothing new by dragging him from the automobile and to the office. Fair treatment of him would have compelled appellants to advise respondent where he sat in the machine to leave the grounds and not to return. Their assault upon and detention of him were unreasonable and such implied finding by the jury left no course open to them but to award him a just compensation.

It cannot be said that $300 was an unreasonable sum. Neither was there error in allowing respondent to recover $750 against the four agents of the Turf Club as punitive damages. Such an award is authorized "in addition to the actual damages" where "the defendant has been guilty of oppression, fraud or malice, express or implied." (Civ. Code, § 3294.) The proof of their having previously learned from respondent his personal history and his wayward career, their manner of approach and pulling him out of the automobile and forcing him to visit their office to be detained, searched and admonished not to return—such proof was sufficient support for the jury's implied finding of oppression and that no act of respondent justified such treatment. The trial court is

the constitutional arbiter of such issues and its determination will not be upset in the absence of a clear showing that its consideration of the issues was arbitrary, indifferent or fraudulent. In fixing the amount of punitive damages juries have an even wider discretion than they have with respect to compensatory damages. (*Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 367 [184 P. 672, 12 A.L.R. 1007].)

While no specific attack is made on the award of $750 as against the operatives, appellants have assigned as prejudicial error that part of the judgment granting respondent $2,000 against the Turf Club as vindictive damages and contend that it cannot be liable for such damages since there is no proof of its authorization or ratification of the wrongful arrest. In this they are correct in view of the prevailing rule in this state. (*McInerney* v. *United Railroads*, 50 Cal.App. 538, 549 [195 P. 958]; 19 C.J.S., p. 964.) There is no evidence that the arrest was made by or with the consent or knowledge of the board of directors or of the governing officers or vice-principals of the corporation; nor is there proof of a subsequent ratification by such board or officials of the action of the agents. The language of Mr. Justice Richards in the McInerney case, *supra*, is the final word upon the subject. Since it has not been modified by statute or decision in the 30 years that have elapsed since its publication, that part of the judgment for respondent's recovery of $2,000 from the corporate defendant will be reversed.

It is therefore ordered that the judgment be modified by striking therefrom the following words and figures, to wit, "together with the sum of $2,000 from the said defendant, Los Angeles Turf Club, Inc., a corporation," and that as thus modified the judgment is affirmed.

McComb, J., and Wilson, J., concurred.