[Civ. No. 33363.   Second Dist., Div. One.   July 23, 1969.]

JOHN ROSEBORO, JR., Plaintiff and Appellant, v. RAWL-INGS MANUFACTURING COMPANY et al., Defendants and Respondents.

Leo Branton, Jr., Albert W. Jones and Jack Tenner for Plaintiff and Appellant.

Schell & Delamer and Richard B. Goethals for Defendants and Respondents.

WOOD, P. J.—This is an appeal by plaintiff from an order granting defendant's motion for a new trial.

Plaintiff Roseboro, while playing baseball as catcher for the Los Angeles Dodgers, was struck in the eye by a pitched baseball which allegedly went through a face mask worn by him, when the ball was "fouled off" a bat. The mask, which was manufactured by the defendant Rawlings Manufacturing Company, was given to plaintiff by the defendant Rawlings Sporting Goods Company. In an action for damages for personal injuries, plaintiff obtained judgment upon a verdict for $20,000. Defendants' motion for a new trial was granted upon the ground, among others, that the evidence was insufficient to support the verdict.

Appellant asserts that the court abused its discretion in granting the motion.

Plaintiff testified, in part, as follows: He had a right to select his baseball equipment, a part of which was a catcher's mask. During the baseball season in 1961, a representative of the defendants, Mr. Latina, approached him in a team club house, showed him a new mask and said it was a lighter weight mask, and asked him to try it. He (plaintiff) took the mask and wore it in the games for the remainder of the season (40 games). He also used it during the 1962 spring training season (25 games), and during the regular 1962 season (20 games) until April 29, 1962 (when the injury occurred). When he was not using the mask, it was kept in the equipment bag with the equipment of two other catchers, and it was shipped from city to city when the team traveled. A mask usually lasts one season, after which it is discarded. During his years as a baseball player, he had not seen a mask break. The mask was struck daily by foul tips, and after each such occurrence he checked the mask and found no defects. He also checked the mask when he removed it from the equipment bag before each game. Several small dents were made in it while he was using it prior to April 29, 1962. It is not unusual for a catcher to continue using a mask with such dents in it. When he catches a "pop fly" he drops the mask. Pitchers throw the ball about 96 miles an hour or faster. On April 29, 1962, while he as catcher was playing baseball for the Dodgers, a pitcher threw a fast ball, and the batter swung his bat, "fouled off" the ball, and the ball hit the mask. He did not see the ball

after the batter fouled it. He fell to the ground, and his eye felt like it was bleeding. He did not know what happened. He does not see how the ball could have gone through the mask, because if it had gone through he would have been "in worse shape" than he was in. He was not unconscious but he was dazed, and he thought that his eye was "almost gone." They took him to the hospital, and the doctor put a compress on his eye and bandaged it. He stayed at the hospital overnight, and went home the next day. He wore the bandage about four days. He returned to the lineup on May 10, 1962, and thereafter played the position of catcher in most of the games during the remainder of the 1962 season. He did not have any pain in his eye, but he had bad headaches during 1962. The headaches disappeared in 1963 or early 1964.

A physician testified in substance that he examined plaintiff in August 1962; plaintiff had no tenderness over the right eye or anywhere else, and there was no soreness of the neck, which is a common occurrence after head injuries; plaintiff said that he was struck by a baseball which protruded through his mask and struck him above the right eye, and that he was taken to a hospital and suffered headaches thereafter; and, based upon plaintiff's history, he (witness) is of the opinion that the headaches were consistent with the injury which plaintiff described.

The mask was received in evidence as Exhibit 1. According to testimony by plaintiff, a "weld" at the top of the mask was broken when it was struck by the ball on April 29, 1962, and a bar at the top of the mask was "pushed back a little," which permitted "room enough" for the ball to go between the top bar and the bottom bar of the mask. (Appellant did not request that the exhibits be included in the record on appeal, and the mask is not part of the record herein.)

Mr. Elliot, called as a witness by the defendants, testified in part that he had been employed by the defendant sporting goods company for 31 years prior to his retirement in 1966; he worked in the production and sale of catcher's masks for baseball players; he was in charge of "quality control" of defendants' products; defendants had standard procedures for checking all types of protective equipment, including masks; the procedures included visual tests of the mask frames by the inspection department; after the designers agreed on the construction of frames, the frames were inspected and tested by the frame manufacturing department, and then were sent to the production department where they

were tested before being accepted for production runs; after the production runs, the frames were inspected visually, and they were then subjected to a quality control visual inspection of the welds, to determine whether they were built to specifications; there were very strict specifications; he had seen the mask herein in St. Louis; it was now in a different condition in that the contour of the frame is changed and some of the welds are broken; the mask appears to have been struck many times by a baseball or by something else; the bottom of the mask is bent or flattened and the top is arched outward beyond the normal contour; a mask is flattened in normal use by being thrown about on the baseball field and by being packed in traveling trunks; a mask becomes weakened in time depending upon its use and abuse; defendants have no control over the mask after it is obtained by a player or a team; and the mask herein appears to have taken sufficient beating to be much less safe than when it left defendants' control.

Mr. Latina, called by the defendants, testified in part that he has been employed in defendants' research and development department for 15 years; his work is devoted primarily to baseball equipment; in August 1961 he showed the mask to plaintiff; plaintiff tried it on and seemed to like it very much, and he told plaintiff he could use it; at that time, the mask was completely covered with black paint; prior to production, the masks are subjected to a "drop test" wherein an eight-pound steel ball is dropped onto the mask from a height of 6 feet until the mask bends or breaks; the production department and the quality control department test the frames before the masks "go onto the market"; he personally inspected the mask herein before he gave it to plaintiff, and it did not appear to have anything wrong with it; the basic design of the mask is common to that of masks used by American baseball players; the mask now appears to be "well-used" and to have been hit hard either by balls or in transportation—it is flattened out from its original appearance; and in his opinion the mask was "pretty well beat up to stay in use."

Several theories of liability were alleged, but the cause proceeded to trial on the issue as to whether defendants were strictly liable for the manufacture and distribution of an allegedly defective mask.

Section 657 of the Code of Civil Procedure provides, in part, that if a motion for a new trial is granted, the court must state the ground or grounds relied upon by the court,

and must specify in the order granting the motion, or in a written specification of reasons thereafter filed, the reasons for granting the motion; and that on appeal from an order granting a new trial upon the ground of insufficiency of the evidence to justify the verdict, it shall be conclusively presumed that the order as to such ground was made only for the reasons specified in the order granting the motion or in the written specification of reasons.

The judge made a written specification of reasons for granting the motion, which specification summarized the evidence and stated, in part, that plaintiff did not sustain his burden of proving that the mask was delivered in a defective state— that plaintiff presented ''no evidence'' thereof, ''but rested his case upon the simple fact that the mask broke while he was using it in the manner for which it was intended to be used, and nothing more''—and that an inference that defendants placed a defective product in plaintiff's hands was impossible.

With reference to granting a motion for a new trial on the ground of insufficiency of the evidence, it was said in *Ganahl* v. *Certain Individuals*, 204 Cal.App.2d 571, 581 [22 Cal.Rptr. 520]: ''The judge presented with a motion for new trial on this ground may review conflicting evidence, weigh its sufficiency. consider credibility of witnesses, reject any testimony believed false and draw any reasonable inferences from the evidence.'' In *Runyan* v. *Semmens*, 212 Cal.App.2d 102, 105 [27 Cal.Rptr. 683], it was said: ''It is within the province of the trial court to resolve conflicts in the evidence in determining whether the issues should be retried.'' As said in *Tice* v. *Kaiser Co.*, 102 Cal.App.2d 44, 46 [226 P.2d 624], in quoting from another case: '' '. . . a trial court is not only authorized but is under a duty to grant a new trial whenever in its opinion the evidence upon which the former decision rests is insufficient to justify the decision and . . . its action in granting a new trial on this ground is discretionary to the extent that if any appreciable conflict exists in the evidence the court's action may not be disturbed on appeal.' ''

Appellant's principal argument, with reference to his contention that the court erred in granting the motion, is to the effect that the order and the specification of reasons did not adequately specify the reasons for granting the motion as required by section 657 of the Code of Civil Procedure.

In *Mercer* v. *Perez*, 68 Cal.2d 104, 115 [65 Cal.Rptr. 315, 436 P.2d 315], it was said, with reference to the specification

of reasons for granting a new trial: "To avoid overtaxing our already burdened trial courts, it will be sufficient if the judge who grants a new trial furnishes a concise but clear statement of the reasons why he finds one or more of the grounds of the motion to be applicable to the case before him. No hard and fast rule can be laid down as to the content of such a specification, and it will necessarily vary according to the facts and circumstances of each case." (See *Hayes* v. *Long Beach Banana Distributors, Inc.,* 270 Cal.App.2d 658, 662 [76 Cal.Rptr. 260].) In *Mercer, supra,* it was said, at page 116, that "if the ground relied upon is 'insufficiency of the evidence' the judge must briefly recite the respects in which he finds the evidence to be legally inadequate." (See *Kincaid* v. *Sears, Roebuck & Co.,* 259 Cal.App.2d 733, 739 [66 Cal.Rptr. 915].)

In the present case, defendants' motion for a new trial was granted on the ground, among others, of insufficiency of the evidence. The judge made a written specification of reasons for granting the motion, which specification consisted of approximately five pages. One of the reasons specified therein was that plaintiff did not present any evidence from which it could be inferred that the mask was defective when it was delivered, and that plaintiff did not meet his burden of proof on that issue. There was a conflict in the evidence as to whether the mask was defective when delivered. Also, there was a conflict in the evidence as to whether the mask was rendered defective by the manner in which it was used after it was delivered. Other reasons specified for granting the motion were that the amount of damages awarded was excessive, and that an erroneous instruction was given. The specification of reasons was adequate. The judge did not abuse his discretion in granting the motion.

The order granting the motion for a new trial is affirmed.

Fourt, J., and Thompson, J., concurred.

A petition for a rehearing was denied August 18, 1969.