[Civ. No. 13033. Fourth Dist., Div. Two. Oct. 25, 1974.]

ARTHUR L. HALE, Plaintiff and Appellant, v.
FARMERS INSURANCE EXCHANGE et al.,
Defendants and Appellants.

## Counsel

Young, Henrie & McCarthy, John C. McCarthy and Timothy P. Burrell for Plaintiff and Appellant.

Moore, Graves, Madory & Johnson and Richard E. Madory for Defendants and Appellants.

## OPINION

**WHYTE, J.**\*—Plaintiff Arthur L. Hale brought suit against his insurance company Farmers Insurance Exchange, its attorney-in-fact, Farmers Underwriters Association (hereafter Farmers), their Orange County claims supervisor, defendant Eugene J. Penasa, and their claims examiner, defendant Sally Lawrence, for bad faith refusal to pay medical benefits due plaintiff under his automobile insurance policy.

A jury verdict was returned October 27, 1972, in favor of plaintiff and against the defendants in the total sum of $212,659.03. Judgment on the verdict was entered and included the following individual verdicts:

1. $2,557.97 plus accrued interest of $601.06 against Farmers for breach of contract;

2. $5,000 compensatory damages against all defendants for bad faith;

3. $200,000 punitive damages assessed against defendant Farmers;

4. $3,000 punitive damages assessed against defendant Penasa;

5. $1,500 punitive damages assessed against defendant Lawrence.

Defendants moved for a new trial and for judgment notwithstanding the verdict.

The trial court granted the motion for judgment notwithstanding the verdict assessing $200,000 punitive damages against defendant Farmers, but denied the motion for judgment n.o.v. as to defendants Lawrence and Penasa.

The trial court's order on the motion for new trial was entered as follows:

1. Granted the motion as to the verdict for $200,000 punitive damages assessed against defendant Farmers on the ground of insufficiency of the evidence;

2. Granted the motion as to the verdict for $2,557.97 breach of contract damages plus $601.06 interest against defendant Farmers on the ground of insufficiency of the evidence unless plaintiff remitted $650;

3. Granted the motion as to the verdict for $5,000 compensatory damages against all defendants on the ground of insufficiency of the evidence unless plaintiff remitted $4,350;

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

4. Denied the motion as to the verdict for $3,000 punitive damages against defendant Penasa and $1,500 punitive damages assessed against defendant Lawrence.

Plaintiff filed a remittitur of $650 damages for breach of contract and, accordingly, the motion for new trial was deemed denied as to that portion of the verdict, leaving judgment against defendant Farmers for breach of contract in the sum of $1,907.97, plus interest of $601.06. No party has appealed from that portion of the judgment.

Plaintiff refused to remit any portion of the $5,000 compensatory damages award.

Plaintiff appeals from the order granting Farmers judgment notwithstanding the verdict. He also appeals from the order granting a new trial to defendant Farmers on the punitive damages issue and from the order granting all defendants a new trial on the issue of $5,000 compensatory damages.

Defendants appeal from the judgment as originally entered except from that portion against Farmers for damages for breach of contract in the net sum (after plaintiff's remittitur) of $1,907.97, plus accumulated interest of $601.06.

A brief summary of the facts indicate that on December 3, 1967, plaintiff and his wife were injured in an automobile collision. At the time of the accident, plaintiff was insured under an automobile liability policy with Farmers Insurance Exchange, an interinsurance exchange (hereinafter Farmers). Included in the benefits of said policy was reimbursement up to $2,000 per person for necessary medical expenses arising out of an automobile accident.

Plaintiff filed his proof of claim with the Orange County claims office of Farmers on the day of the collision. On December 13, 1967, the claims office received a first medical report together with an authorization executed on the company form giving Farmers complete access to any and all medical, hospital and doctors' records pertaining to treatment and medical care to plaintiff and his wife.

Following emergency examination and treatment, Mr. and Mrs. Hale began a course of treatment with Dr. Zinkan, which lasted several months.

As treatment progressed, Farmers paid certain benefits amounting to approximately $92. However, after learning the treating doctor had referred plaintiff to an orthopedist, Dr. Merlin C. Smith, Farmers refused to pay further benefits.

Although Dr. Zinkan's first medical report did not reflect any injury to plaintiff's lumbar spine, and estimated his disability as one month, symptoms developed within two weeks of the accident and followed the clinical pattern of a traumatic herniated disc: positive electromyogram three weeks following the collision; pain radiating down the inside of plaintiff's legs, persistent and increasing radiation pain in leg.

On February 20, 1968, Dr. Smith's examination revealed a positive sciatic stretch, and a lumbar myelogram confirmed the injury to the disc. Surgery was performed on February 23, 1968.

Defendant Sally Lawrence handled the processing of plaintiff's claim for medical benefits. She had three years' experience in handling claims and six years' experience in reading medical reports. Her superior was defendant Eugene J. Penasa, who was claims supervisor of the Santa Ana claims office of Farmers. He had been with the company since 1957, and claimed experience and understanding of traumatic ruptured disc injuries.

Defendant Lawrence talked to Dr. Zinkan's office on February 13, 1968. She was advised plaintiff required additional treatment and, in fact, was being referred to an orthopedic doctor, Dr. Merlin C. Smith.

An appointment was set up with an orthopedic surgeon selected by defendant insurance company for an independent medical examination. When informed of the appointment plaintiff's wife called defendant Lawrence and advised her that plaintiff was unable to keep it because he was then hospitalized, recuperating from back surgery. No other independent examination of plaintiff was requested by the company.

In March 1968, an investigator for Allstate Insurance examined plaintiff's file at Farmers in connection with a claim by plaintiff against the adverse driver in the accident, who was insured by Allstate. He made a detailed report of this examination of Farmers' file including therein an itemization of expenses for hospital and medical bills for surgery. He also specified the names and addresses of the doctors and the hospital, and the general nature of the surgery performed on Mr. Hale.

Defendants claimed they never received any bills from plaintiff until December 12, 1968, and had no medical report in their file relating the disc injury to the accident of December 3, 1967. They continued to refuse payment.

Failing to obtain payment, plaintiff turned the matter over to his attorney, who received a letter dated March 3, 1969, from defendant Penasa indicating payment would be forthcoming if plaintiff would furnish a medi-

cal report giving them sufficient information to substantiate that the injury was related to the accident.

In the interim, plaintiff's file was closed in the claims office on November 12, 1968, and a regional file opened. Evidence indicated it was the usual practice to follow the procedure when no bills were unpaid at the end of one year following the filing of a claim.

No evidence was introduced to show why plaintiff's claim was transferred to a regional file less than one year after it was opened, and while it contained unpaid medical bills.

Although the "cooperation clause" of plaintiff's policy merely specified he was to file his claim and authorize inspection of all medical expenses and reports pertaining to the claim, Penasa stated his interpretation of the policy authorized him to request plaintiff to furnish the medical reports.

Evidence reflected that defendants took no action to obtain a medical report directly until February 14, 1969, more than 14 months after plaintiff filed his claim, approximately one year after defendant Lawrence received information of plaintiff's back surgery, and two months after bills were admittedly received.

The testimony of both Penasa and Lawrence revealed that there was no evidence in their file to show the back injury was not related to the covered collision.

### Appeal by Plaintiff

Plaintiff first contends the court erred in granting Farmers a judgment notwithstanding the verdict assessing punitive damages against it.

The jury determined the individual defendants had committed a tortious act upon plaintiff in failing to make payments on a valid claim for medical payments under his policy of insurance. They further found the said defendants were guilty of oppression or malice and assessed punitive damages against them. The trial court apparently concurred in this finding and award as it refused to grant a motion for judgment notwithstanding the verdict as to the individual defendants.

However, the jury also found the corporation liable for punitive damages and assessed the sum of $200,000 against Farmers. The court granted a judgment in favor of Farmers notwithstanding the said verdict.

The court also granted a new trial on this award. However, the fact the trial court granted a new trial on the ground of insufficiency of the evidence

does not determine it should have granted the motion for judgment notwithstanding the verdict. Different principles govern these motions. (*Tremeroli* v. *Austin Trailer Equip. Co.* (1951) 102 Cal.App.2d 464, 477 [227 P.2d 923]; 4 Witkin, Cal. Procedure (2d ed. 1971) § 374, p. 3169.)

■ In making the order granting the motion for judgment notwithstanding the verdict, the trial court may not weigh the evidence or judge the credibility of the witnesses, as it may do on a motion for new trial, but must accept the evidence tending to support the verdict as true, unless on its face it should be inherently incredible. Such order may be granted only when, disregarding conflicting evidence and indulging in every legitimate inference which may be drawn from plaintiff's evidence, the result is no evidence sufficiently substantial to support the verdict.

■ On an appeal from the judgment for defendant notwithstanding the verdict, the appellate court must read the record in the light most advantageous to the plaintiff, resolve all conflicts in his favor, and give him the benefit of all reasonable inferences in support of the original verdict. (*Quintal* v. *Laurel Grove Hospital* (1964) 62 Cal.2d 154, 159 [41 Cal.Rptr. 577, 397 P.2d 161].)

■ The denial of the motion as to the award of punitive damages assessed against Penasa and Lawrence reflects the trial court's concurrence in that verdict. To sustain a verdict for punitive damages, the defendant must not only have committed a tort but also must have been guilty of malice, fraud or oppression. (Civ. Code, § 3294.) The trial court had directed a verdict for defendants on the fraud count, therefore, it is clear said court must have found the evidence established oppression or malice. It is also clear the court agreed defendants did not act in good faith since a tortious act must be established before punitive damages can be assessed. (*Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 801-802 [197 P.2d 713].)

Thus, the granting of the judgment notwithstanding the verdict must be resolved by a determination whether there was any substantial evidence to sustain a finding of knowledge, authorization or ratification on the part of defendant Farmers for the acts of Penasa and Lawrence.

■ While an employer may be liable for an employee's tort under the doctrine of *respondeat superior,* he is not responsible for punitive damages where he neither directed nor ratified the act. (*Ebaugh* v. *Rabkin* (1972) 22 Cal.App.3d 891, 895 [99 Cal.Rptr. 706]; *McInerney* v. *United Railroads* (1929) 50 Cal.App. 538, 549 [195 P. 958].)

■ California follows the rule laid down in Restatement of Torts, section 909, which provides punitive damages can properly be awarded against a principal because of an act by an agent if, but only if "(a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the employer or a manager of the employer ratified or approved the act."

"Although there has been no fault on the part of a corporation or other employer, where a person acting in a managerial capacity either does an outrageous act or approves of such an act by a subordinate, the imposition of punitive damages upon the employer serves as a deterrent to the employment of unfit persons for important positions." (Rest., Torts, § 909, com. a.)

■ The testimony was that Penasa was the "claims supervisor" in charge of Farmers' Santa Ana branch office; he assigned the handling of the claims in the geographical area of this office. He admittedly was the person who had approved the initial bills totaling approximately $92. He supervised all the medical claims in the office. He had full authority to determine whether payment should be authorized or withheld.

Both Penasa and Lawrence testified they were merely following the "usual procedure" of Farmers in processing plaintiff's claim. Such usual and authorized procedure could have been viewed by the jury as including the practice of making unauthorized and oppressive demands on the insured to himself furnish medical reports when the policy, construed as it must be most strongly in favor of the insured (*Culley* v. *New York Life Ins. Co.* (1945) 27 Cal.2d 187, 194 [163 P.2d 698]), required only that the insured execute the necessary consents so that the company could procure whatever medical reports it desired. Penasa stated he would handle this same claim in exactly the same way in any future similar situation.

The jury could have determined that by following Farmers' "usual procedures" in processing claims, all of the acts and conduct of the individual defendants were known and directed by the corporation, since such "usual procedures" had to be known and authorized by those who dictated company policies. (See *Schanafelt* v. *Seaboard Finance Co.* (1951) 108 Cal. App.2d 420, 424 [239 P.2d 42].)

■ Ratification is a question of fact. The burden of proving ratification is upon the party asserting its existence. But ratification may be proved by circumstantial as well as direct evidence. Anything which convincingly

shows the intention of the principal to adopt or approve the act in question is sufficient. (2 Cal.Jur.2d, Agency, § 102, pp. 768-769.) ▇ It may also be shown by implication. " '. . . where an agent is authorized to do an act, and he transcends his authority, it is the duty of the principal to repudiate the act as soon as he is fully informed of what has been thus done in his name, . . . else he will be bound by the act as having ratified it by implication.' " (*Ralphs* v. *Hensler* (1893) 97 Cal. 296, 303 [32 P. 243].)

▇ Penasa testified claim files in his office were sent to the regional office at the end of one year following the filing of a claim if no bills remained unpaid in the file. At that time it could be reviewed by other personnel of Farmers. Plaintiff's file was forwarded in the usual manner.

While Penasa did not know whether it was ever reviewed, the jury could infer that it was, and that all of the conduct of the individual defendants became known to the corporation through such examination. Nonpayment of the claim thereafter could be found by the jury to mean that the company had adopted and approved of Penasa's decision not to pay plaintiff's claim. His conduct was thus ratified.

Whether the trial judge, or we, concur with the jury's evaluation of the testimony is not controlling. The controlling factor is that there was evidence from which the jury could have inferred either authorization or ratification of the acts of Lawrence and Penasa. Therefore the judgment notwithstanding the verdict must be reversed.

In the alternative the trial court granted a motion for new trial on the issue of exemplary damages against the defendant Farmers. The tests of the validity of this order are substantially different from those used in testing the validity of the judgment notwithstanding the verdict.

▇ All presumptions are in favor of the order granting a new trial and an appellate court will not disturb the ruling unless a manifest and unmistakable abuse of discretion is made to appear. (*Klinger* v. *Henderson* (1969) 276 Cal.App.2d 774, 777 [81 Cal.Rptr. 305].) The 1965 amendments to Code of Civil Procedure section 657 specifying that a new trial shall not be granted unless the court is satisfied that the jury clearly should have reached a contrary verdict and requiring the court to state its reasons for believing the evidence insufficient does not alter the authority of the trial judge to disbelieve witnesses, reweigh evidence and draw reasonable inferences that are contrary to those drawn by the jury. (*Roseboro* v. *Rawlings Mfg. Co.* (1969) 275 Cal.App.2d 43, 47 [79 Cal.Rptr. 567]; *Dixon*

v. *St. Francis Hotel Corp.* (1969) 271 Cal.App.2d 739, 742 [77 Cal.Rptr. 201].)

Plaintiff contends the trial court's order granting a new trial is erroneous because the specification of reasons is inadequate (*Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 363-364 [90 Cal.Rptr. 592, 475 P.2d 864]), and is based on erroneous principles of law applicable to the case. (*Conner* v. *Southern Pacific Co.* (1952) 38 Cal.2d 633, 637 [241 P.2d 535].)

■ Under the provisions of Code of Civil Procedure section 657, as amended in 1965, where the ground relied upon is insufficiency of the evidence to support the verdict, a trial judge must briefly identify the portion of the record which convinces the judge the court or jury should have reached a different verdict or decision. While he need not cite page and line, nor discuss the testimony of particular witnesses, nor the weight to be given each item of evidence, he must not merely state his reasons in terms of conclusions, issues or ultimate facts, but must supply the reviewing court with information such as to enable it to review the order in a meaningful way. (*Scala* v. *Jerry Witt & Sons, Inc., supra* (1970) 3 Cal.3d 359, 363-364.)

In *Mercer* v. *Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315], the court concluded the 1965 amendment to Code of Civil Procedure section 657, requiring articulation of reasons was designed to serve a dual purpose: (1) to foster mature and careful reflection by the trial court before ruling on the motion for new trial, and (2) to make the review on appeal from the order more meaningful. (*Ibid.*, pp. 112-115.)

An order granting a new trial on the ground of insufficiency of the evidence to justify the verdict shall be reversed only when there is no substantial basis in the record for any of such reasons. (*Thompson* v. *John Strona & Sons* (1970) 5 Cal.App.3d 705, 709 [85 Cal.Rptr. 350].) ■ Granting a motion for new trial rests in the discretion of the trial judge to such an extent that a reviewing court will not interfere unless an abuse of discretion clearly appears. An appellate court's review is limited to the inquiry as to whether there was any support for the trial court's ruling. All presumptions are in favor of the order and it may be reversed only when " 'it can be said as a matter of law that there is *no* substantial evidence to support a contrary judgment,' " or to support the trial court's specification of reasons. (*Mercer* v. *Perez, supra* (1968) 68 Cal.2d 104, 114; *Thompson* v. *John Strona & Sons, supra* (1970) 5 Cal.App.3d 705, 709.)

No hard or fast rule can be laid down as to the content of such a specification, and it will necessarily vary according to the facts and circumstances of each case. (*Mercer* v. *Perez, supra* (1968) 68 Cal.2d 104, 115.)

Respondent contends the award of punitive damages against Farmers is not supported for the reason the evidence is insufficient to show the corporation was guilty of malice, fraud or oppression. (Civ. Code, § 3294.)

Such position, however, is not well taken. Nothing is contained in the court's specification of reasons to indicate insufficiency of the evidence with respect to the finding of malice or oppression from the conduct of the individual defendants.

The court unequivocally stated plaintiff's claim had been arbitrarily handled. The jury found defendants Penasa and Lawrence guilty of malice or oppression as shown by its verdict assessing punitive damages against said defendants, and the court's concurrence in such determination is evident by its refusal to grant a new trial on that issue.

Liability was thus established. The only question before this court is a determination of whether the malicious acts were authorized or ratified by the defendant corporation.

 We turn now to plaintiff's contention the court's specification of reasons is inadequate and examination of those reasons set forth in the margin[1] makes it abundantly clear the court determined the evidence did

---

[1]"The evidence is insufficient to support said verdict. Plaintiff's counsel points to three things as evidence to support the verdict. The Court believes none of those three constitute such evidence and that there is nothing else in the record to constitute such evidence.

"The three things plaintiff's counsel has pointed to are as follows:

"1. Mr. Penasa, Supervisor of the Santa Ana Branch Claims Office of Farmers testified that Farmers followed its usual procedure in handling plaintiff's claim. Counsel apparently argues that from this evidence the trier of fact might fairly infer that the 'usual procedure' of Farmers is to arbitrarily refuse to pay the claims of its customers, for this is what happened in plaintiff's case; that this 'usual procedure' of Farmers would constitute the authorization by Farmers of Mr. Penasa's action necessary to establish corporate liability for punitive damages.

"This argument fails for two reasons. First, the inference is not reasonable; therefore, it must be rejected. It is not reasonable to suppose that Farmers' policy is to arbitrarily refuse to pay its customers—at least it is not reasonable to so suppose in the absence of any better evidence than the above inference. For this inference to be drawn would require finding what the company policy was which Mr. Penasa had in mind when he so testified. Mr. Penasa testified directly as to what the company policy was which he had in mind when he so testified, thus leaving no room for inference. He testified that the company policy was to pay promptly and fairly; that it was necessary to have good ground to deny a claim.

"Second, even if the inference could be drawn, it is outweighed by the direct

not sustain a finding of knowledge, authorization, or ratification on the part of the corporation sufficient to warrant an award of punitive damages.

The court has set forth the evidence relied upon by plaintiff to support the verdict, and has given a short, concise statement as to why he determined such evidence was not sufficient. The dual purpose of section 657— careful reflection—meaningful review—has thus been satisfied. (*Scala* v. *Jerry Witt & Sons, Inc., supra* (1970) 3 Cal.3d 359, 364-365.)

The question then remains as to whether there is any substantial basis in the record for the reasons given. (*Meiner* v. *Ford Motor Co.* (1971) 17 Cal.App.3d 127, 135 [94 Cal.Rptr. 702].)

In its first reason, the court refused to draw the inference of authority from the conclusionary statement of the witnesses that they followed Farmers' usual procedure. On the contrary it found Penasa's testimony was uncontradicted with respect to Farmers' policy of being "fast, fair and friendly," and a good ground was needed to deny a claim. It deemed such evidence overcame any possible inference the company policy was to arbitrarily deny a claim as it is alleged was done in plaintiff's case.

Plaintiff argues the court erroneously inferred a claim was being made that Farmers arbitrarily denied all claims. He takes the position that by

---

evidence of company policy quoted in the preceding sentence. In addition, there was direct evidence that the company policy was to be 'fair, fast, and friendly.'

"2. 'Farmers received knowledge of Mr. Penasa's and Mrs. Lawrence's wrongful acts when it was sued. Farmers ratified those acts by denying the charges and filing five affirmative defenses.' But this is not evidence of the requisite corporate authorization or ratification of the employees' acts, for there is no evidence that Farmers' Board of Directors, governing officers, or vice principals had knowledge of the suit or had anything whatsoever to do with filing the answers and affirmative defenses (see *Alterange* [*sic*] v. *L. A. Turf Club,* 97 Cal.App.2d 735, 740 [218 P.2d 802].) None of them were served with process, for the record shows that Farmers' general counsel accepted services for Farmers.

"The complaint and answers are not verified so there is no evidence of who, if anyone, on behalf of the Corporation had a hand in preparing the answer. For all that the record shows, the answer may have been entirely the work of counsel, and counsel's action in the absence of evidence of corporate authorization cannot be deemed to constitute corporate ratification. (*McInerney* v. *United Railroad[s],* 59 [*sic*] Cal.App. 538, 548 [195 P. 958].)

"3. 'Farmers, after the suit was filed, refused to pay the claim thus ratifying Mr. Penasa's and Mrs. Lawrence's wrongful acts.' The evidence was that after March 3, 1969, Farmers had agreed through counsel to pay plaintiff $1,900. This was not payment in full of the $1,907.97 claim. So the difference of $7.97 plus interest would constitute non-payment. But this was counsel's action which, as noted above, cannot constitute corporate action in the absence of corporate authorization. There was no evidence of corporation authorization of the offer.

"4. 'Farmers ratified Mr. Penasa's and Mrs. Lawrence's wrongful acts by failing to fire them.' There is no evidence that Farmers did not fire them."

following the company's "usual procedure," plaintiff meant to show only that such usual procedure was authorized and directed by officials of the corporation who set company policy; therefore, knowledge of the manner in which plaintiff's claim was handled was evident, and had been directed by an officer of sufficient rank to bind the corporation.

Plaintiff relies upon *Schanafelt* v. *Seaboard Finance Co., supra* (1951) 108 Cal.App.2d 420. In *Schanafelt* the court sustained a $2,000 punitive damage award against a corporate employer where one of its employees detained plaintiff for two hours while he awaited the arrival of a truck to transport repossessed furniture. The plaintiff testified that all he did was in the usual performance of his duties. The court stated, "[i]f this was his customary practice it must have been known to and authorized by those who dictated the collection policies of the corporation." (*Ibid.*, p. 424.) This customary practice might well have been viewed as including the practice of detaining owners until actual repossession was effected. No similar practice was here involved.

*Schanafelt* is also distinguishable in that the court found express authorization from evidence that during the detention, plaintiff had placed a telephone call to his superiors, and the court inferred he could have been acting under express instructions.

Plaintiff herein presented no evidence from which express instructions could be inferred.

In passing upon a motion for a new trial, a judge admittedly has the authority to reweigh the evidence, and draw reasonable inferences therefrom contrary to those drawn by the jury. (*Klinger* v. *Henderson, supra* (1969) 276 Cal.App.2d 774, 777.) The trial judge here simply refued to draw the inference of authority from this evidence and this he had a right to do.

In order to hold an employer liable for punitive damages on account of a tort committed by an employee, the evidence must show that the employer personally participated in the wrongful acts, or that he previously authorized them, or subsequently ratified them with full knowledge of the facts. In the absence of such a showing, the employer is not liable for exemplary damages. (*Deevy* v. *Tassi* (1942) 21 Cal.2d 109, 125 [130 P.2d 389]; *McInerney* v. *United Railroads, supra* (1929) 50 Cal.App. 538, 549.)

California follows the rule laid down in Restatement of Torts section 909.

"Although there has been no fault on the part of a corporation or other employer, where a person acting in a managerial capacity either does an

outrageous act or approves of such an act by a subordinate, the imposition of punitive damages upon the employer serves as a deterrent to the employment of unfit persons for important positions." (Rest., Torts, § 909, com. a.)

This is not a case such as *Davis* v. *Local Union No. 11, Internat. etc., of Elec. Workers* (1971) 16 Cal.App.3d 686 [94 Cal.Rptr. 562] or *Lowe* v. *Yolo County etc. Water Co.* (1910) 157 Cal. 503, 510-511 [108 P. 297], wherein the acts were performed by top executives of the defendant corporation who constitute "to all purposes of dealing with others the corporation." Nor is there any evidence of express authorization such as was found in *Davis*.

While defendant Penasa was the claims supervisor of the Santa Ana claims office of defendant Farmers and had authority to approve or disapprove medical claims when all of the supportive information was in the file, the trial judge was justified in holding he was not a managerial officer so as to bring his conduct within the exception of the Restatement of Torts, section 909. Plaintiff had the burden of showing that his duties and responsibilities made him an officer of sufficient rank to bind the corporation. (*McInerney* v. *United Railroads, supra* (1929) 50 Cal.App. 538, 548.)

Plaintiff next argues that in order to raise the issue of ratification it must be shown the conduct of Penasa and Lawrence was not only not authorized but was, in fact, repudiated.

" '[W]here an agent is authorized to do an act, and he transcends his authority, it is the duty of the principal to repudiate the act as soon as he is fully informed of what has been thus done in his name, . . . . else he will be bound by the act as having ratified by implication.' " (*Ralphs* v. *Hensler, supra* (1893) 97 Cal. 296, 303.)

This is a proper statement of the law, but must fail in the instant case since there was no evidence to show that an officer of sufficient power to bind the corporation was fully informed of the wrongful acts of defendants Penasa and Lawrence.

It is plaintiff's position that ratification was established as a matter of law when service of complaint was effected on Farmers Underwriters Association by serving the general counsel, George Maslach, the admitted attorney-in-fact of Farmers. He argues that the service was proper and knowledge of the misconduct of its employees was thereby imputed. He argues that by failing to repudiate the acts at that time constituted ratification. He further alleges that the corporation ratified the conduct of Penasa

and Lawrence when the answer to plaintiff's complaint was filed and affirmative defenses raised.

In its specification of reasons, the trial court found service of the summons and an unverified complaint upon the general counsel and the filing by counsel of the answer containing affirmative defenses did not constitute evidence of the corporation's ratification.

In explaining its reason for so holding, the court pointed to the fact that the answer had not been verified, thus there was no evidence of who, if anyone on behalf of the corporation, had a hand in the preparation of the answer or knew of its contents. Thus, the court reasoned the answer may have been entirely the work of counsel and counsel's action in the absence of evidence of authorization did not constitute ratification.

Although one of the methods of showing a ratification of an agent's unauthorized act is by bringing an action or basing a defense on the unauthorized act (Rest. 2d Agency, § 97), the institution of the action or the assertion of the defense will not amount to ratification of the unauthorized act if action is begun or answer interposed without a knowledge of all the material facts. (3 Am.Jur.2d, Agency, § 174, p. 559; *Hildebrand* v. *Beck* (1925) 196 Cal. 141, 147 [236 P. 301, 39 A.L.R. 1076].)

Therefore, plaintiff's contention it constitutes ratification as a matter of law cannot be sustained. Something more is required. The defense must be continued after the acquisition of such knowledge. (Rest. 2d Agency, § 97.)

There was no evidence to show counsel himself was a managerial officer of defendant corporation.

It should also be noted that the answer of defendants, after the withdrawal of the affirmative defenses consisted of a general denial of all the allegations of plaintiff's complaint except for the following admissions: Penasa and Lawrence were the employees of Farmers; the amount of approximately $92 had been paid on plaintiff's claim, and there was a valid existing policy of insurance.

Under Restatement Second Agency, section 97, comment c, where a defense is maintained based upon the transaction as the agent was authorized to conduct it, principal does not ratify the unauthorized transaction, although he knows the third person claims the transaction included, as it did, unauthorized acts.

Having withdrawn the affirmative defenses after discovering that the facts did not support them, and standing merely on a general denial, al-

though admitting the existence of the agency and valid insurance policy, it cannot be said Farmers was ratifying unauthorized acts.

The court's next specification refutes the position of plaintiff that Farmers ratified the conduct of its employees after suit was filed by failing to pay the balance due on plaintiff's claim up to the limits of his policy. The court states there was evidence that Farmers offered plaintiff the sum of $1,900 after March 3, 1969, the date of Penasa's letter to plaintiff's attorney, still refusing payment for lack of supporting medical information. Again, this was deemed to be the attorney's independent action and no authorization was established.

This specification of reasons for finding insufficiency of the evidence is clearly in error. No evidence of any offer was admitted into evidence.

Defense counsel attempted to elicit information an offer had been made of $1,900. Objection was made to the question. A discussion was held between both attorneys and the court. Attention of the court was directed to a stipulation between counsel that no evidence would be admitted regarding a statutory offer to compromise. Defense counsel argued it was not the statutory offer he was referring to, but an offer made by him personally to plaintiff's original attorney, Mr. Stegman. His position was it had relevance to the question of punitive damages. However, at the conclusion of the discussion, defense counsel withdrew the question despite the fact plaintiff's attorney withdrew his objection. The jury had no evidence before it of any offer made by Farmers at the time they reached their verdict.

The court's final specification indicated there was no evidence to support a finding Farmers ratified the conduct of its employees, Penasa and Lawrence by failing to fire them. The record reflects that neither Penasa nor Lawrence were employees of Farmers at time of trial. It also indicates they left their employment with the corporation after suit was filed. However, no question was directed to either of them as to whether they voluntarily terminated their relationship with Farmers or were asked to do so. No evidence is contained in the record as to why the employees left Farmers. The trial judge was within his authority in refusing to draw the inference that they were not fired.

Plaintiff next urges the court based its specifications of reasons on erroneous principles of law applicable to the case. (*Conner* v. *Southern Pacific Co., supra* (1952) 38 Cal.2d 633.) In the cited case, the court held that if it appears on appeal that a trial court based its order exclusively upon an erroneous concept of legal principles applicable to the case, its order will be reversed. (*Ibid.*, p. 637.)

The court here clearly did not base its order on an erroneous concept of the law. The thrust of the entire specification was directed to a lack of evidence to find knowledge, authorization or ratification of the wrongful acts of Farmers' employees. Such a finding is a material issue to be resolved before punitive damages may be assessed. (*Deevy* v. *Tassi, supra* (1942) 21 Cal.2d 109, 125; Rest., Torts, § 909.)

Plaintiff's contention cannot be sustained.

As the specifications of reasons for granting Farmers a new trial on exemplary damages were not based upon erroneous principles of law and as three of the four reasons find a substantial basis in the record, the order granting such new trial must be affirmed.

■ Plaintiff next contends the court erred in granting a new trial on the compensatory damage award of $5,000 as against all defendants.

The court on ruling on the motion for new trial stated: "The motion of all defendants for new trial for insufficiency of the evidence to justify the verdict of $5,000.00 for compensatory damages for breach of duty of good faith is granted and a new trial is ordered on that issue subject to the condition that said motion is denied if plaintiff consents to the reduction of said verdict to $650.00 on or before January 8, 1973. Pursuant to plaintiff's motion to amend his pleadings, economic loss was the only item of damage to be awarded in this connection. The only item of economic loss for which there was support was $650.00 for witness fees. No evidence (and no law) was offered to support plaintiff's argument of additional economic loss through his mileage from Kansas and board and room in California during trial."

Plaintiff declined to remit any portion of the compensatory award.

The right of a trial court to grant a new trial unless the recipient of a damage award consents to a reduction is too firmly established to be open to question. (*Dorsey* v. *Barba* (1952) 38 Cal.2d 350, 367 [240 P.2d 604]; *Sharp* v. *Automobile Club of So. Cal.* (1964) 225 Cal.App.2d 648, 652 [37 Cal.Rptr. 585].)

If plaintiff fails to submit his consent within the time specified, the alternative part of the order automatically becomes operative, and the part granting a new trial is the final order. (See *Chapman* v. *Municipal Court* (1949) 91 Cal.App.2d 689, 691-693 [205 P.2d 712].)

Where an order granting a new trial is based on insufficiency of the evidence it will not be disturbed on appeal if there is evidence to support

the position of the trial court. (*Sharp* v. *Automobile Club of So. Cal., supra* (1964) 225 Cal.App.2d 648, 652.)

The court here followed the mandate of section 657 of the Code of Civil Procedure by specifying its reasons for determining the evidence insufficient. The statement was short and concise, but clear. Plaintiff needed only to address himself to the stated deficiency, and this court is enabled to determine if there is a substantial basis for finding such deficiency. (See *Mercer* v. *Perez, supra* (1968) 68 Cal.2d 104, 115.)

Plaintiff amended his complaint on the first day of trial, withdrawing the first count of the first cause of action. This count sought relief for intentional infliction of emotional distress. He informed the court the other two counts—fraud and conspiracy—were to remain, as well as the second cause of action for breach of contract. Additionally, he advised plaintiff was seeking only to recover the amount due for medical payments under his policy of insurance and economic loss suffered by the failure to make such payments. He withdrew any claim for damage for emotional distress.

The only evidence of economic loss related to the fees of plaintiff's medical experts for testifying at trial. The total amount of these fees was $650. Although testimony showed plaintiff was then residing in Arkansas, no attempt was made to establish the amount of his economic loss for expenses incurred in attending trial in California.

A review of the record supports the reasoning of the court both as to plaintiff's entitlement to compensatory damages for his economic loss, and that the amount was excessive. Whether the amount of $650 proposed by the court was adequate is not before us since plaintiff, acting entirely within his rights, saw fit not to accept this sum. (*Sharp* v. *Automobile Club of So. Cal., supra* (1964) 225 Cal.App.2d 648, 652.)

The trial court's specification of reasons for granting a new trial to Farmers on this issue is adequate and supportive, hence the order is affirmed. The order itself is unclear but such retrial should be limited to the amount of damages only and not to the issue of liability. (*Sharp* v. *Automobile Club of So. Cal., supra* (1964) 225 Cal.App.2d 648, 654.)

### Cross-Appeal of Defendants

Due to the affirmance of the orders granting appellant Farmers a new trial its cross-appeal is moot and should be dismissed.

The appeal of defendants Penasa and Lawrence rests on a different basis. Although the order granting their motion for new trial on this

issue of compensatory damages for bad faith has been affirmed, the individual judgments against each of them for punitive damages still stand.

Whatever might be our feelings if the matter were open we are bound by the holding and opinion of the Supreme Court in *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 512 P.2d 1032]. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) Here as in *Gruenberg* the claim is for damages resulting from "Defendants' failure and refusal to pay the sums due plaintiff under said policy" of insurance. Here as in *Gruenberg* the duty breached was the duty to deal fairly and in good faith with the insured. Here as in *Gruenberg* it is alleged that the other defendants were agents and employees acting under their employment. In *Gruenberg* the allegation is that these defendants were employees, not independent contractors as suggested by the dissent herein. Here as in *Gruenberg* it was alleged that all defendants conspired together. The only evidence introduced was of acts of defendants in connection with the claim made under plaintiff's policy of insurance issued by defendant Farmers. There was no evidence that defendants Penasa and Lawrence were off on a frolic of their own or did anything but exercise "bad faith" in denying plaintiff's claim against the insurance company. The only facts proved in this action as to the conduct of the individual defendants were facts held in *Gruenberg* to be insufficient to constitute a cause of action against the individual agents or employees for either actual or exemplary damages. On the authority of that case the motion of defendants Penasa and Lawrence for judgment notwithstanding the verdict should have been granted. The judgment against them must be reversed.

The judgment of the trial court for defendant Farmers notwithstanding the verdict is reversed; the orders granting Farmers a new trial on both the issue of general damages for bad faith and punitive damages is affirmed, the new trial on the issue of general damages only to be limited to the amount of such damages; the judgment against defendants Penasa and Lawrence is reversed with instructions to enter judgment for said defendants.

Appellant Hale shall recover his costs on appeal against defendant Farmers; cross-appellants Penasa and Lawrence shall recover their costs on appeal against cross-respondent Hale.

Gardner, P. J. concurred.

**KERRIGAN, J.,** Concurring and Dissenting.—I am in full accord with the majority decision reversing the judgment notwithstanding the verdict. Similarly, I have no difficulty in concurring with the decision to retry the *general damage* issue as there may be some question as to the amount of compensatory damages awarded by the jury and that issue could be simply and quickly resolved in the trial forum.

But I strongly disagree with the majority in depriving the insured (plaintiff) of the $200,000 *punitive damage* award against the insurer (Farmers) and in further depriving the insured of the $3,000 punitive damage award against the claims supervisor (Penasa). Simply stated, the punitive damage awards should be upheld.

The jury impliedly found that the claims manager acted oppressively, maliciously and in bad faith in the handling of plaintiff's claim. The trial judge also so found. In addition, the majority correctly notes that there is substantial evidence supporting that determination. Notwithstanding the findings and the evidence, the trial judge and the majority rationalize that Farmers failed to authorize or ratify the tort and is therefore not punitively liable. The majority go further and conclude that not even the supervisor can be held punitively responsible.

I cannot argue with the proposition that Farmers did not ratify the supervisor's tort. Indeed, it would be a startling event if any corporate insurer sanctioned the intentional tort of its agent when the result would be to expose itself to liability for punitive damages. Rather, the crucial question is whether the insurer may be held liable punitively for the tort of oppression, malice or bad faith in the handling of a claim by its claims supervisor. I would hold the insurer liable where the supervisor is acting in a managerial capacity at the time of the commission of the tort.

In a tort action where the defendant has been guilty of oppression, fraud or malice, the plaintiff, in addition to actual damages, may recover punitive damages. (Civ. Code, § 3294.) Generally, however, an employer is not liable in punitive damages for the torts of his agents or employees unless he has authorized the tortious acts. The rationale for the general rule is simply that punitive damages will have no deterrent effect if awarded against one who is not responsible for the tort. (4 Witkin, Summary of Cal. Law (1974) Torts, § 855, p. 3147.) But there are two exceptions to the nonliability rule: (1) where the employer knowingly ratifies the tort after its commission (*Davis* v. *Local Union No. 11, Internat. etc. of Elec. Workers,* 16 Cal.App.3d 686, 697 [94 Cal.Rptr. 562]; 4 Witkin, Summary of Cal. Law (1974) Torts, § 856, pp. 3147-3148) or (2) where the tort was committed by an employee or agent acting in a managerial capacity (*Lowe*

v. *Yolo County etc. Water Co.*, 157 Cal. 503, 511-513 [108 P. 297]; *Toole* v. *Richardson-Merrell Inc.*, 251 Cal.App.2d 689, 711-712 [60 Cal. Rptr. 398, 29 A.L.R.3d 988]).

While many jurisdictions extend the employer's liability in punitive damages to the intentional torts of *any* employee, the rule in California is that liability without ratification or authorization should be limited to those acting in a managerial capacity. (*Kuchta* v. *Allied Builders Corp.*, 21 Cal. App.3d 541, 549-550 [98 Cal.Rptr. 588]; Rest., Torts, § 909.)

Penasa was the claims supervisor of Farmers' Santa Ana claims office. He had broad authority to approve or reject medical and property damage claims. His territory extended over the southern half of Orange County— a major metropolitan area. He reviewed all claims and signed all drafts. In addition, he had the responsibility of assigning the personal injury claims submitted to his office to investigators in the field. In other words, he exercised considerable control over Farmers' operations and was therefore acting within a "managerial capacity" within the meaning of the Restatement. Consequently, the jury properly determined that Farmers was liable in punitive damages for its supervisor's tortious acts.

Finally, the majority hold as a matter of law that Penasa may not be held liable in punitive damages for his tortious conduct.[1] In doing so, the majority relies primarily on *Gruenberg* v. *Aetna Ins. Co.*, 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]. Without detailing the facts, I would submit that *Gruenberg* is distinguishable from the case under review for several reasons.

First, the individual defendants in *Gruenberg* were not permanent, managerial employees of the defendant-carriers. They were independent contractors (adjusters and attorneys) retained by the insurance companies *only* to investigate and litigate plaintiff's insurance claims. They only had a tenuous relationship with the policy of insurance out of which plaintiff's tort claim of "bad faith" arose. Since they had no authority to deny the claimant the benefit of his policy, they could in nowise commit the tort of "bad faith." Here, however, Penasa was a permanent managerial employee of Farmers, with ultimate corporate authority to dispose of Hale's claim. Penasa's "contacts" with the insurance policy in question make it clear that he was as much a "party" to this agreement as if his name had appeared on the policy. Thus, he was subject to an implied duty of good faith and fair-dealing, and ought to be held liable for his willful breach of that duty.

---

[1] I have no quarrel with the decision to reverse the $1,500 punitive damage award against the claims examiner (Sally Lawrence) inasmuch as there is no substantial evidence that she was acting in a managerial capacity.

Second, the extension of the *Gruenberg* rule protecting independent contractors from punitive damage liability makes little sense in the present context for it would mean that any employee of an insurance company who willfully and in bad faith denies a claimant payment on his policy of insurance would be insulated from the punishment of exemplary damages for his conduct. One's sense of justice cannot help but be affronted when the application of abstract legal doctrine yields such a result in practice. The *Gruenberg* court could not possibly have intended to insulate intentional tortfeasors from exemplary liability merely because they happen to work for an insurance carrier.

Third, *Gruenberg* was a pleading case, following the sustaining of a demurrer. Here, there was a trial on the merits and a determination made that the tort was committed, resulting in actual and punitive damages. Penasa should be held individually liable for the amount of the punitive award.

I would uphold the $200,000 punitive damage award against the insurer (Farmers) and I would also sanction the $3,000 punitive damage award against the claims supervisor (Penasa).

A petition for a rehearing was denied November 15, 1974, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied January 23, 1975. Mosk, J., was of the opinion that the petition should be granted.