Filed 3/26/14  L&M Renner, Inc. v. Stevenson CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| L&M RENNER, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>EILEEN STEVENSON,<br><br>    Defendant and Respondent. | A137998<br><br>(Humboldt County<br>Super. Ct. No. DR110734) |

Appellant L&M Renner, Inc., sued respondent Eileen Stevenson (Patricia)[1] to recover money owed on a credit agreement that bears her and her son's signatures.  The trial court granted Patricia's motion for summary judgment on the basis that the uncontroverted evidence demonstrated that Patricia had neither signed nor ratified the contract.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In spring 2009, Kenneth Drake, Patricia's son, applied to Renner for credit to buy petroleum products with a "card key" at automated fuel pumps.  The application included Patricia's name as a co-applicant, along with a signature purporting to be hers.  The application was accepted by Renner, and it became the contract between the parties (the credit agreement).

---

[1] We will refer to respondent as Patricia (another name by which she is known), and we will refer to her and her husband by their first names to differentiate them since they share the same surname.

1

Drake used the card key, but he apparently encountered financial difficulties and failed to stay current on his payments to Renner. A couple of years after the account was opened, Patricia's husband, Harley, who is Drake's stepfather, called Renner's credit manager to discuss the account. The manager told Harley that Patricia's permission was required before she (the manager) could discuss the account with Harley. Harley put Patricia on the phone, and she authorized Harley to speak on her behalf. The manager then told Harley the amount owed,[2] and Harley stated that he and Patricia would make weekly payments so that the account did not fall behind again. Harley also said that he would visit Renner's office to review the terms of the card keys that had been issued to make sure they were set up properly. On July 1, Harley paid Renner $10,000 on Drake's account in order "to help him out."

According to Renner's credit manager, Harley called on July 5, 2011, and promised to pay an additional $5,000 by July 11. The manager told Harley that amount would be insufficient to avoid a "card lockout." According to the manager's declaration: "I reminded him that his wife [Patricia] was a co-signer and was responsible for payment. He said I would hear from him by July 7, 2011, at the latest, but I did not hear from him on that date." Instead, according to the manager, Harley called on July 12 and told her he was obtaining a loan and could pay an additional $5,000 the next day. The manager told Harley that that amount would be insufficient to keep the account active, and the account was locked out that day. Neither Patricia nor Harley ever denied that Patricia's name was on the account.

Two months later, in September 2011, Renner sued Drake and Patricia for breach of contract and a common count of an open-book account for money due. Its complaint alleged that Patricia was a joint account holder on the credit agreement. Patricia's answer alleged two affirmative defenses: (1) her daughter-in-law (Drake's wife) forged Patricia's signature on the credit agreement, and (2) the complaint was barred by the statute of frauds. In June 2012, Renner filed an amended complaint, adding Drake's wife

---

[2] The amount that was owed at the time is not identified in the record, but Renner sought $32,414 in damages.

2

as a defendant.[3] The company alleged that she forged Patricia's signature on the credit agreement and told one of Renner's employees that Patricia had signed it. The complaint alleged causes of action for fraud against Drake's wife and conspiracy to commit fraud against both her and Drake.

The following month, Patricia filed a motion for summary judgment arguing that the undisputed facts established there was no agreement between her and Renner. She denied having signed the credit agreement. Patricia is blind and cannot read what she signs. Harley helps her sign legal documents by first reading them to her and then by printing her name for her. Harley reviewed the credit agreement before filing a declaration supporting Patricia's motion for summary judgment, and in his declaration he attested that he was never asked to read the credit agreement and that the signature was not Patricia's. Renner opposed the motion for summary judgment, but it presented no evidence that the signature on the credit agreement was Patricia's. In her reply, Patricia objected on various grounds to most of the paragraphs of the declaration from Renner's credit manager that had been filed in support of Renner's opposition.

In September, Renner filed a second amended complaint and again modified its theory of the case. The complaint again alleged that Patricia was a joint account holder on the credit agreement, and it added, in the alternative, that Patricia ratified her signature on the contract through her and Harley's statements and by making payments on the account. The complaint further alleged that Patricia agreed she was indebted to Renner through Harley's statements (presumably, a reference to the telephone conversation between him and a Renner representative in July 2011).[4]

---

[3] It appears that Renner obtained a default judgment against Drake and his wife. They are not parties to this appeal.

[4] Although it appears that the second amended complaint was filed after Patricia's motion for summary judgment, the record does not indicate whether the second amended complaint was accepted. Thus, we cannot determine which complaint was at issue when the trial court granted summary judgment in Patricia's favor. But we not need resolve the issue because Renner does not contend on appeal that the order granting Patricia's summary judgment motion was procedurally defective.

3

At the hearing on the motion for summary judgment, the trial court at first seemed inclined to deny the motion, stating that it "[s]eems to me that a significant factual dispute is whether or not Patricia signed the document." In response, Patricia's attorney argued that it was undisputed that Patricia did not sign the credit agreement and that Harley's statements supposedly proving an oral agreement to assume the debt were inadmissible because they were hearsay statements of a nonparty.

The trial court ultimately ruled in favor of Patricia and granted her motion for summary judgment on the basis that she did not agree in writing to be responsible for Drake's debt. Patricia's attorney offered to prepare the order, stating that "I assume the basis is that there is no writing showing a promise to pay for her son's debt." The trial court responded, "You can put in what you believe is the basis, and I will make corrections of that."

The same day as the hearing, the trial court filed an order granting the motion for summary judgment. The order states that the undisputed facts show that Patricia did not sign the credit agreement, never charged gas at Renner, and never signed a written agreement promising to pay for gas charged by another. The trial court also sustained all of Patricia's evidentiary objections. The court also sustained Renner's hearsay objection to Patricia's statement that her daughter-in-law admitted that she forged her name on the credit agreement.

About a month later, the trial court filed an amended order granting summary judgment. The order states that Renner failed to prove that Patricia signed the credit agreement, and Harley's statements to Renner's representative did not amount to an adoptive admission as to Patricia. The order did not specifically address the parties' evidentiary objections. Renner timely appealed from the subsequent judgment.

## II.
### DISCUSSION

#### A. *The Standard of Review.*

"A trial court properly grants summary judgment where no triable issues of material fact exists and the moving party is entitled to judgment as a matter of law.

(Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

A defendant meets his or her burden of demonstrating a cause of action has no merit by showing that an element of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of a material fact exists to that cause of action or defense. (*Merrill v. Navegar, Inc.*, *supra*, 26 Cal.4th at pp. 476-477; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854-855.)

B.  *The Trial Court Properly Found There Was No Triable Issue on the Cause of Action for Breach of Contract.*

1.  There is no triable issue on whether Patricia consented to the credit agreement.

California law requires four elements to form a valid contract: (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) sufficient consideration. (Civ. Code, § 1550.) In presenting declarations stating that she had not signed the relevant contract, Patricia essentially challenged the second element, arguing that she had not consented to the terms of the contract. (Civ. Code, § 1565 [consent to a contract must be communicated by each party to the other]; *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208 [contract formation requires mutual consent].)

Renner argues that Patricia failed to satisfy her initial burden on summary judgment on this point because she "stop[ped] short" of denying she signed the credit contract, and she did not "unequivocally state that she never signed the subject contract." We disagree. Patricia attested that "I have never been asked to nor have I ever agreed to sign any contracts with Renner Petroleum or anyone else wherein I agreed to be legally responsible for Ken Drake's or anyone else's fuel purchases from Renner Petroleum." Harley likewise attested that the signature on the credit agreement was not Patricia's, that he had not helped her sign the contract, and that it would not be Patricia's custom to sign

5

a legal document without his assistance because she is legally blind. This evidence was uncontroverted, and therefore we must accept it as true for purposes of summary judgment. (*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 636; Code Civ. Proc., § 437c, subd. (e) [summary judgment may not be denied on grounds of credibility or for want of cross-examination of witnesses].)

It may be true, as Renner argues, that Patricia did not affirmatively establish that Drake's wife forged Patricia's signature. (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 467-468 [moving defendant has higher burden on summary judgment to establish an affirmative defense than to negate cause of action].) But it does not follow that Patricia failed to meet her burden of negating one of the elements of Renner's claim. Taken together, Patricia and Harley's declarations were sufficient evidence to negate Patricia's consent to the credit agreement, and the burden then shifted to Renner to establish a genuine issue whether Patricia did, in fact, consent. (*Merrill v. Navegar, Inc.*, *supra*, 26 Cal.4th at pp. 476-477.) Renner presented nothing to establish such consent and instead focused on statements by Harley made after the debt was incurred.[5]

We find unpersuasive Renner's argument that summary judgment should have been denied because the statute of frauds was inapplicable. (Civ. Code, § 1624.) The statute of frauds requires that a promise to pay the debt of another must be in writing. (*Id.*, subd. (a)(2).) Renner contends that the statute of frauds does not help Patricia because she was listed on the credit agreement as a co-applicant and not a guarantor. But regardless of any requirement that the credit agreement be in writing, Patricia met her burden of showing that she did not agree to be bound by the contract's terms (either orally or in writing), an essential element of an enforceable contract, and her showing was not rebutted.

---

[5] Evidence that Patricia consented to the credit agreement would have been inconsistent with Renner's allegations in the first and second amended complaints that Drake's wife forged Patricia's signature on the credit agreement.

2. There is no triable issue on whether Patricia ratified the credit agreement.

Renner contends that it met its burden of establishing a triable issue on its theory that Patricia ratified her forged signature on the credit agreement. Civil Code section 2307 provides that "[a]n agency may be created, and an authority may be conferred, by a precedent authorization or *a subsequent ratification*." (Italics added.) "Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by [her]. [Citations.] A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is 'inconsistent with any reasonable intention on [her] part, other than that [she] intended approving and adopting it.' " (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73.) A principal may ratify the forgery of her signature by her agent. (*Id.* at pp. 73-74 [party whose signature was forged on promissory note ratified note by accepting benefits of agreement after learning of forgery].) Ratification is a question of fact, and the burden of proving ratification is on the party claiming its existence. (*StreetScenes v. ITC Entertainment Group, Inc.* (2002) 103 Cal.App.4th 233, 242.)

Patricia attested that she did not learn that her name was on the credit agreement until her husband spoke with someone at Renner, and she suggested that she never would have agreed to the credit agreement because she lacked the financial means to obligate herself to such an open-ended expense. She further attested that she never had a Renner credit card, and she had never charged anything on a Renner credit card or any other Renner account. In other words, she presented evidence that she never accepted any *benefits* of the credit agreement. (*Alvarado Community Hospital v. Superior Court* (1985) 173 Cal.App.3d 476, 481 [well-settled rule of agency that principal ratifies agent's actions where he voluntarily *accepts the benefits* of an unauthorized transaction].) Rather

7

than showing that Patricia accepted benefits of the credit agreement, the evidence simply shows that Harley made a payment to help Patricia's son.

Renner's evidence that Harley agreed to make payments on the key-card account fell short of establishing a triable issue whether Patricia ratified the agreement. On appeal, Renner relies on its complaint, arguing that because it alleged that Drake's wife acted as Patricia's agent and Patricia ratified the credit agreement, Patricia was required to "refute" this issue but failed to do so. But when opposing summary judgment, a plaintiff "may not rely upon the mere allegations . . . of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists." (Code Civ. Proc., § 437c, subd. (p)(2); see also *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1211.)

The cases upon which Renner relies do not help the company. It cites *Hale v. Farmers Ins. Exch.* (1974) 42 Cal.App.3d 681, 691[6] for the general proposition that ratification is a question of fact. *Hale* was an appeal from a jury verdict in favor of a plaintiff whose insurance company denied claims for medical expenses following a car crash. (*Id.* at pp. 686-689.) The appellate court concluded that the jury could have found that the company knew and directed two employees' actions in processing the claims because these employees testified that they had followed the company's standard procedures when they processed plaintiff's claim. (*Id.* at pp. 688, 691.) Here, by contrast, there is no evidence that Drake or his wife were Patricia's employees or agents or that either of them followed standard procedures that Patricia knew about and had endorsed. (See also *Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1491 [summary judgment on ratification appropriate where no dispute that company investigated harassment allegations and did not ratify actions of employee].)

Renner also relies on *Hernandez v. Madrigal*, an unreported federal case from the Central District of California, but that case likewise is inapposite. (2010 WL 1493506.)

---

[6] *Hale* was disapproved on another ground in *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 822, footnote 5.

8

In *Hernandez*, the plaintiff alleged that his son-in-law and a friend of the son-in-law refinanced a loan on a home the plaintiff owned using forged loan documents. (*Id.* at p. *1.) The plaintiff sought summary adjudication on whether the deed was forged, but the district court denied the motion, concluding there was a triable issue on ratification because the plaintiff continued to make payments on the loan even after he learned of the alleged forgery. (*Id.* at pp. *1, *4.) Even though the plaintiff claimed he was forced to make payments in order to avoid foreclosure, the court concluded that a reasonable jury could conclude that he ratified the terms of the refinanced loan by continuing to pay. (*Id.* at p. *4.) The court emphasized that the alleged acts of forgery occurred almost a year before the plaintiff reported a possible forgery and that the plaintiff had continued to make all the monthly payments during the year. (*Ibid.*) Here, by contrast, we may not draw any inference that Patricia agreed to the terms of the credit agreement when the uncontroverted evidence shows only that her husband, Harley, made one payment after learning that money was due, and he received no benefits from the contract.

Moreover, Renner oversimplifies *Hernandez*'s holding when it claims that the allegedly forged deed in that case, standing alone, "was enough to send the case to a jury to weigh the evidence for and against the existence of a forgery." The court in *Hernandez* relied on Evidence Code section 1451, which creates a presumption that an *acknowledged* (notarized) document is genuine. (*Hernandez v. Madrigal*, *supra*, 2010 WL 1493506 at p. *3; see also Civ. Code, § 1180 et seq. [authorized persons and procedures required to lawfully acknowledge documents].) The credit agreement here was not notarized.

In short, there was no triable issue of material fact on Renner's cause of action for breach of contract.

### C. *The Trial Court Properly Found There Was No Triable Issue on Renner's Common Counts.*

In the second amended complaint, Renner's second cause of action for common counts alleged that Patricia became indebted to Renner in two ways: (1) on an open-book

9

account for money due and (2) based on an account stated in writing. These are interrelated claims that we address together.

A book account is defined by Code of Civil Procedure section 337a as "a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner." (See also *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1343 [summary judgment appropriate on cause of action for open-book account where four-page exhibit failed to meet statutory requirements].)

As for an account stated, "[p]arties transacting business with each other, and keeping accounts of their transactions and items of indebtedness, may come to an *agreement upon the amount of the final balance due* from one to the other. This agreement is an *account stated*, a new and independent executor contract. The items in the original accounts are merged in the account stated." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 972, p. 1062, original italics.) "An account stated is an agreement, based on prior transactions between the parties, that the items of an account are true and that the balance struck is due and owing. [Citation.] To be an account stated, 'it must appear that at the time of the statement an indebtedness from one party to the other existed, that a balance was then struck and agreed to be the correct sum owing from the debtor to the creditor, and that the debtor expressly or impliedly promised to pay to the creditor the amount thus determined to be owing.' [Citation.] The agreement necessary to establish an account stated need not be express and is frequently implied from the circumstances. When a statement is rendered to a debtor and no reply is made in a reasonable time, the law implies an agreement that the account is correct as

10

rendered." (*Maggio, Inc. v. Neal* (1987) 196 Cal.App.3d 745, 752-753.) "Actions on accounts stated frequently arise from a series of transactions which also constitute an open book account. [Citations.] However, an account stated may be found in a variety of commercial situations. The acknowledgement of a debt consisting of a single item may form the basis of a stated account. [Citation.] The key element in every context is agreement on the final balance due." (*Id.* at p. 753.)

Renner claims that there is a triable issue whether Harley acted as Patricia's agent "for purposes of dealing with [Renner] about the subject contract," requiring a trial on its two common counts.[7] But even if Renner could show that Harley was speaking for Patricia, it does not follow that there was a triable issue on all the required elements for relief. Again, Patricia attested that she was not aware her name was on Drake's account until Harley spoke with a Renner representative, and she attested that she lacked the means to commit to a large, open-ended expense. This was sufficient to establish that Patricia did not have a history of transactions with Renner as is required to show a claim for a book account or an account stated.

In its opposition, Renner presented no evidence of the sort of detailed statement necessary under Code of Civil Procedure section 337a to establish a book account, or any written bills or specific amount owing, for that matter. Renner apparently would have us construe Harley's payment of $10,000 and his promise to pay more as having created an account stated, and one that would obligate Patricia. To the contrary, there was no evidence that the parties agreed to one "final balance due," only that Harley would try to bring the account current. (*Maggio, Inc. v. Neal*, *supra*, 196 Cal.App.3d at p. 753.) Renner's representative attested that the additional $5,000 offered by Harley would not

---

[7] The trial court concluded that "[t]he statement made by [Harley] to [Renner]'s representative is not an adoptive admission as to Patricia Stevenson." Renner construes this as an evidentiary ruling barring the consideration of Harley's statements, and it argues that we should reverse this evidentiary ruling and consider this evidence. Even assuming Harley's statements are admissible, they do not create a triable issue of fact.

11

be sufficient to bring the account current, but she did not specify the amount that would have been sufficient.

Moreover, the account-stated claim also fails because it is settled that "the rendering of an account, although not objected to, *cannot create a liability where no liability existed before*." (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 26, italics added; see also 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 973, p. 1063.) In other words, an offer to pay on a debt that was not previously owed fails to establish a cause of action for an account stated.

Where there is no genuine issue of material fact, the reviewing court should affirm the trial court's judgment if it is correct on any theory of law applicable to the case. (*Fretland v. County of Humboldt*, *supra*, 69 Cal.App.4th at p. 1490.) Having concluded that there is no genuine issue of material fact on any of Renner's causes of action, we conclude that the trial court correctly granted summary judgment.

III.
DISPOSITION

The judgment is affirmed. Respondent shall recover her costs on appeal.

_____
Humes, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.


*L&M Renner v. Stevenson* (A137998)


13